**M.E.C., Appellant**

v.

**COMMONWEALTH of Kentucky, CABINET FOR HEALTH AND FAMILY SERVICES; Eric Lee Joiner; and Corey J. Reece, Appellees.**

No. 2007–CA–001904–ME.

Court of Appeals of Kentucky.

May 16, 2008.

---

Sandra F. Keene, Louisville, KY, for appellant.

Mary Gaines Locke, Cabinet for Health and Family Services, Munfordville, KY, for appellees.

Before CLAYTON, NICKELL, and TAYLOR, Judges.

## OPINION

CLAYTON, Judge.

M.E.C. appeals from a judgment terminating her parental rights to N.L.J. and C.J.R., hereinafter (the "children"). M.E.C.'s termination rights are the only ones at issue because the fathers of the children have not appealed the decision terminating their parental rights. (E.L.J. is the father of N.L.J. and C.J.R. is the father of C.J.R.)

We vacate and remand the termination judgment as it relates to M.E.C.

## BACKGROUND

The twenty-four year old mother's biological children are N.L.J., who was born on March 2, 2004, and C.J.R., who was born on January 26, 2005. The Cabinet

for Health and Family Services, hereinafter (the "Cabinet"), became involved with M.E.C. and her children in March 2005, upon allegations of neglect. On July 8, 2005, M.E.C. alleged domestic violence and entered the BRASS shelter with the children. On this date, July 8, 2005, M.E.C. tested positive for cocaine. While at the shelter, the mother received services and obtained a job.

On the evening of August 15, 2005, M.E.C. left the shelter to buy formula for the children. The mother had permission to leave the shelter and to borrow another resident's car. She returned approximately one hour later, and the car had been shot at several times. During this incident, the children were not with M.E.C. as she had asked someone to watch them while she went to the grocery store.

Immediately following this incident, the Cabinet filed a petition for removal of the children from M.E.C.'s custody. The Cabinet alleged that M.E.C. had been at a drug house and that was the reason for the bullet holes in the car. They based this allegation on a police report from that evening, which had stated shots were fired in an area of Bowling Green reputed to have a high crime rate and drug use. Both children were removed from her custody by an emergency custody order on August 16, 2005.

The Cabinet's case plan for M.E.C. required that she obtain a drug assessment and comply with its recommendations, maintain a bond with her children, establish a safe and secure home for the children, attend and complete parenting classes, and resolve her legal issues. Additionally, M.E.C. was court ordered to obtain a psychological assessment.

Eight months after the children's removal from M.E.C.'s custody, the Cabinet changed the goal of the case plan from reunification of the family to termination of parental rights and adoption of the children. The Petition for Involuntary Termination of Parental Rights was filed on May 24, 2006. The trial was conducted over four separate days—March 9, 2007; April 12, 2007; June 1, 2007; and, August 2, 2007.

To meet the requirements of the case plan, the Cabinet established the parenting time on a once-weekly, one-hour supervised visit for M.E.C. with the children. M.E.C. exercised this visit until September 2005, when she was briefly incarcerated. Then, in early October 2005, M.E.C. was involved in a near-fatal car accident and airlifted to Vanderbilt Hospital in Nashville, Tennessee. As a result of the car accident, M.E.C. suffered severe brain trauma and was hospitalized for two months. Upon her release from the hospital, she resumed her scheduled visits in December and had one visit with them in January 2006. Unfortunately, she then suffered an infection related to her brain surgery from the October 2005 car accident and was readmitted to the hospital.

■ According to the testimony of Sherry Roberts, the Cabinet's ongoing social worker for the family, after this hospitalization, M.E.C. resumed her scheduled visits with her children except for periods of incarceration: March 2006, May through December 2006, and March through April 2007. All incarceration periods were relatively short and always less than a year. And M.E.C. visited her children whenever it was permitted and she was not hospitalized or incarcerated. Furthermore, incarceration alone cannot be considered as grounds for termination of parental rights. *J.H. v. Cabinet for Human Resources*, 704 S.W.2d 661 (Ky.App.1985).

Regarding her parenting classes, M.E.C. attempted to complete her parenting classes but had difficulty first because of

the cognitive impairment from the car accident and later from the lack of parenting classes available during her incarceration. After release from her last incarceration, during the pendency of the trial, M.E.C. requested help in finding suitable parenting classes in Jefferson County, but this help was not given. Instead, she signed up for parenting classes on her own accord.

Concerning substance abuse treatment, M.E.C. has attended several substance abuse programs. When released from jail in December 2006, M.E.C. entered Our Ladies of Promise, a substance abuse treatment facility in Louisville. Another program she participated in was the substance abuse program (S.A.P.) at the Kentucky Correctional Institute for Women at Pee Wee Valley. She did not complete the six months program because she was released after three months. Upon her release from Pee Wee Valley, she reenrolled in the substance abuse treatment program at Our Ladies of Promise, where she was staying on the final day of the trial. At this time, M.E.C. was also employed fulltime with Kentucky School Service. At trial, her employer described her as a good and reliable worker.

M.E.C. noted at trial that she still has some legal issues pending, but she is working through the theft and drug-related charges. Similarly, M.E.C. has paid some but not all of her child support obligation.

During her incarcerations, M.E.C. had difficulty being able to meet the requirements of her case plan. Even though M.E.C. requested that Warren County Social Service have the Jefferson County Social Services provide services to her, they did not do so. Further, Ms. Roberts, her primary social worker, was on extended medical leave twice during this time period. And until Ms. Roberts returned from medical leave, M.E.C. found it difficult to arrange her parental visits with her children because she was in Louisville and the children were in Bowling Green. This problem was rectified once Ms. Roberts returned from her leave.

On August 24, 2007, the Warren Circuit Court adopted findings of fact and conclusions of law tendered by the Cabinet, which terminated M.E.C.'s parental rights.

## JUDICIAL REVIEW

The standard for review in termination of parental rights cases is set forth in *M.P.S. v. Cabinet for Human Resources,* 979 S.W.2d 114, 116–17 (Ky. App.1998). Therein, it is established that this Court's standard of review in a termination of parental rights case is the clearly erroneous standard found in Kentucky Rules of Civil Procedure (CR) 52.01, which is based upon clear and convincing evidence. Hence, this Court's review is to determine whether the trial court's order was supported by substantial evidence on the record. And the Court will not disturb the trial court's findings unless no substantial evidence exists on the record. *V.S. v. Commonwealth, Cabinet for Human Resources,* 706 S.W.2d 420, 424 (Ky.App. 1986).

Furthermore, although termination of parental rights is not a criminal matter, it encroaches on the parent's constitutional right to parent his or her child, and therefore, is a procedure that should only be employed when the statutory mandates are clearly met. While the state has a compelling interest to protect its youngest citizens, state intervention into the family with the result of permanently severing the relationship between parent and child must be done with utmost caution. It is a very serious matter. *V.S. v. Commonwealth, Cabinet for Family Services,* 194 S.W.3d 331, 335 (Ky.App.2006). With this

standard in mind, we turn to the issues raised in the mother's appeal.

## ANALYSIS

■ Kentucky Revised Statutes (KRS) 625.090 sets forth the grounds for involuntary termination of parental rights. A circuit court may involuntarily terminate parental rights if it finds by clear and convincing evidence that a child is or has previously been adjudged, abused or neglected, and that termination is in the child's best interest. Then, the circuit court must find the existence of one or more of ten specific grounds set forth in KRS 625.090(2).

■ M.E.C. claims that the trial court failed to make independent findings of fact as required by CR 52.01 and adopted the Cabinet's proposed findings of fact with only one minor addition. Nonetheless, we acknowledge that the trial court requested that both parties submit proposed findings of fact, and they did. Without commenting on whether or not a trial court should make its own findings of fact, we note that it is not an error for the trial court to adopt findings of fact drafted by someone else. *Bingham v. Bingham,* 628 S.W.2d 628 (Ky.1982).

According to the Cabinet, the applicable provisions of KRS 600.020(1) to define an "abused or neglected child" are as follows:

a child whose health or welfare is harmed or threatened with harm when his parent, guardian, or other person exercising custodial control or supervision of the child....

. . . .

(b) Creates or allows to be created a risk of physical or emotional injury as defined in this section to the child by other than accidental means;

(c) Engages in a pattern of conduct that renders the parent incapable of caring for the immediate and ongoing needs of the child including, but not limited to, parental incapacity due to alcohol and other drug abuse as defined in KRS 222.005;

(d) Continuously or repeatedly fails or refuses to provide essential parental care and protection for the child, considering the age of the child;

. . . .

(h) Does not provide the child with adequate care, supervision, food, clothing, shelter, and education or medical care necessary for the child's well-being....

The Cabinet states that the children were removed from M.E.C. because she tested positive for cocaine, returned to the spouse abuse center with bullet holes in a car, had a history of criminal activity, was on parole at the time of the hearings, and had ongoing criminal issues. Based on this evidence and pursuant to the statute, the trial court found that the children were abused and neglected, and it was in the best interest of the children that M.E.C.'s parental rights be terminated.

M.E.C. challenges these reasons as conclusory and contends that the Cabinet supplied no evidence that the children were abused or neglected. Neither child had any physical or emotional injury while in M.E.C.'s care, and in fact, both were well-cared for and in good health at the time of their removal. M.E.C. admittedly suffered from addiction issues and was incarcerated for periods of time; however, no evidence was introduced that M.E.C. did not care or provide for her children when they were in her custody. As a matter of fact, the Cabinet's witnesses described M.E.C. as a nurturing and loving parent, whose children were well-dressed and clean when in her care. And the Cabinet witnesses testified that during her scheduled visits with her children, M.E.C. brought toys, clothes,

and treats for them. Therefore, M.E.C. declares that the first prong of the test for termination of parental rights has not been met.

With regard to the second prong required to meet termination of parental rights, M.E.C. asserts that the Cabinet never provided any evidence supporting termination of parental rights as being in the best interests of the children.

Next, M.E.C. asserts that the Cabinet failed to provide services to her as its duty is set forth in KRS 625.090(3)(c). First, while she acknowledges during periods of hospitalization and incarceration she would have been unable to care for her children, she did request that the Cabinet evaluate two named relatives for the children. The Cabinet contends that it did investigate and that neither placement was appropriate. Here, without making any conclusions regarding this issue, we recognize that placement with relatives may be an option for consideration, but nothing more. *V.S. v. Commonwealth,* 706 S.W.2d at 426.

Second, the Cabinet changed its permanency goal from reasonable efforts for reunification to termination of parental rights and adoption for the children, only eight months after the children's removal, and filed the action to terminate M.E.C.'s parental rights just one month later. Neither the court nor the Cabinet clarified the reason for the change in the permanency goal. During the eight months, M.E.C. was recovering from a serious car accident, hospitalized, and incarcerated in March 2006. But these facts alone do not seem to give a valid or sufficient reason to change the goal from reunification to termination.

The Cabinet is charged with the statutory responsibility to provide services to a family to facilitate reintegration. *L.B.A. v. H.A.,* 731 S.W.2d 834 (Ky.App.1987). M.E.C. contends that the Cabinet failed in

this responsibility toward her family and herself.

The third prong required to terminate parental rights is for the Cabinet to present clear and convincing evidence of the existence of one or more grounds found in KRS 625.090(2). In the case at hand, the Cabinet proffered that the following grounds were pertinent: that the parents had failed to provide essential parental care and protection and had failed to provide essential food, clothing, shelter, medical care or education. KRS 625.090(2)(e) and (g). Both grounds also require a showing that there is no reasonable expectation of improvement.

Here, M.E.C. maintains that KRS 625.090(3)(c) obliges the Cabinet to demonstrate prior to the filing of a petition for termination that it has made reasonable efforts to reunite the children with their parents. As has previously been provided, the Cabinet made its decision to move from reunification to termination only eight months after taking custody of the children. M.E.C. received little or no services during those eight months primarily because she was hospitalized or incarcerated for the majority of that time. And despite the fact that her situation changed more than once over the eight months, the Cabinet did not alter her case plan to address those changes. It seems that hospitalization, following a life-threatening car accident, cannot be viewed as failure to provide parental care. Also, the Cabinet supplied no evidence that, other than incarceration and hospitalization, that M.E.C. was uncooperative with her plan.

Moreover, M.E.C. states that she made great strides with her case plan once she was released from jail. She cooperated with the Cabinet. M.E.C., in order to maintain her parental bond as cited in the case plan, visited with her children when she was able. During her incarceration,

M.E.C. struggled with meeting this requirement; however, the Cabinet does not facilitate phone calls or visitation between incarcerated parents and their children.

M.E.C. began parenting classes on two different occasions. Both classes were interrupted by either hospitalization or incarceration. After release, M.E.C. asked the Cabinet for a referral in Jefferson County for parenting classes but they did not make the referral. According to M.E.C.'s testimony, on her own initiative, she found and signed up for parenting classes. Similarly, the Cabinet through its witnesses testified that the children were well-cared for by M.E.C. and that she was a nurturing mother.

M.E.C. met the objective of receiving a psychiatric evaluation during her incarceration. Although it was a competency evaluation rather than a clinical one, the Cabinet, during the trial, moved to admit the evaluation.

Regarding substance abuse problems, M.E.C. enrolled two times, on her own accord, in a substance abuse program at Our Ladies of Promise in Louisville, Kentucky. At the close of the trial, M.E.C. had reentered the program, was working full-time, and had enrolled in parenting classes, which she was paying for herself. As an aside, while residing at Our Ladies of Promise, the Cabinet has not facilitated phone calls between her and the children. Further, M.E.C. must arrange her own transportation for visitation with the children in Bowling Green and does so.

Notwithstanding M.E.C.'s assertions regarding both the lack of Cabinet services and her efforts to meet the Cabinet's goals, the Cabinet, in proving these grounds, noted that, even though incarceration alone cannot be considered grounds for termination of parental rights, adoption of a criminal life style can be considered as a factor in the determination. *See Cabinet for Human Resources v. Rogeski*, 909 S.W.2d 660 (Ky.1995). Certainly, the facts here are substantially different than the facts of *Rogeski*. Mr. Rogeski was incarcerated for the rape of the half sister of the children involved and was serving a sentence for that crime of five to twenty-five years. Thus, Mr. Rogeski's case was bolstered by KRS 625.090(2)(b), which specifies that "acts of abuse or neglect toward any child in the family" is a factor that circuit courts shall consider in determining the best interest of the child subject to the termination. Furthermore, he had never contributed to the economic well being of the family.

Here, the Cabinet never clearly laid out the criminal activities of M.E.C., but merely submitted Petitioner's Exhibit 9, stating that she had numerous theft and drug-related charges. The Cabinet did not highlight or point out in its Brief specific information as to criminal violations that may have occurred during the pendency of the action. They seemed to be primarily parole violations. Furthermore, the Cabinet was aware of her criminal history when the children came under the purview of the Cabinet. One of M.E.C.'s goals was to resolve her legal issues. On the final day of the trial, M.E.C. testified that while she still had some criminal charges, she was very near completely resolving them. And, in contrast to Mr. Rogeski, the fact remains that M.E.C. provided evidence and testimony that she was doing everything she could to meet the goals of her plan.

## CONCLUSION

To reiterate, parental rights are so fundamentally esteemed under our system that they are accorded due process protection under the Fourteenth Amendment of the United States Constitution. *O.S. v. C.F.*, 655 S.W.2d 32, 33 (Ky.App.1983).

As has been stated above, KRS 625.090 provides that the circuit court may involuntarily terminate all parental rights of a parent of a named child if it finds from the pleadings and by clear and convincing evidence that the child has been adjudged to be an abused or neglected child, as defined in KRS 600.020(1), and that termination would be in the best interest of the child.

The statute goes on to state that no termination may occur unless the court finds by clear and convincing evidence that at least one of the enumerated factors was proven. Here the pertinent factors are as follows: "[t]hat the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child and that there is no reasonable expectation of improvement in parental care and protection . . ."; and second, "[t]hat the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct. . . ." KRS 625.090(2)(e) and (g).

█ We believe that the Cabinet has not met its burden of proof in the case at hand and that substantial evidence was not provided to sever M.E.C.'s parental ties to her children.

First, we do not believe the Cabinet presented substantial evidence that the children were abused and neglected as required under KRS 600.020(1). It was not shown that the children suffered any direct, emotional or physical injury from the mother. The Cabinet witnesses testified that she was a nurturing mother and that her children were well-cared for by her.

█ In the incident, which precipitated the children's removal, the Cabinet also did not meet its burden of providing clear and convincing evidence that M.E.C. had been involved in a drive-by shooting. Rather, they supplied a police report from that area saying that on the evening in question, shots were fired in an area reputed to have a high crime rate and drug use. No direct proof of her involvement in this occurrence was provided in the report. And the children were not with her, she had permission to leave and authority to use the car that she was driving. While it is true that M.E.C. tested positive for cocaine when she initially entered BRASS, it appears that no drug test was performed at the time of the car incident and the children's removal from M.E.C.'s custody.

█ Second, we find that reasonable services to reunite the family were not provided to M.E.C. and her children. The goal from reunification to termination was changed after only eight months time, of which M.E.C. was either incarcerated or hospitalized. The Cabinet never changed its plan for reunification to accommodate M.E.C. during this time. In addition, the Cabinet never provided any rationale for changing the goal.

█ Finally, we find no substantial evidence in the record to support a finding that there is no reasonable expectation of improvement in M.E.C.'s situation. At the conclusion of the trial, M.E.C. was in a substance abuse treatment center, had a full-time job, acquired parenting classes for herself, and had resolved most of her legal issues. She argued that the court failed to acknowledge the improvements she had made in her lifestyle, such as her enrollment in a rehabilitation program and her testimony that she had a full-time job, and had instead based its decision solely on her past conduct. We agree with her

and cite our opinion in *Forester v. Forester*, 979 S.W.2d 928, 930 (Ky.App.1998), "where the lack of ability to provide parental care and protection is the basis for involuntary termination, the trial court must find that there is no reasonable expectation of improvement in parental care and protection as required by KRS 625.090(1)(d)." [1] Significantly, the statute has no requirement that the parent completely eradicate all problems immediately.

 Likewise, the Cabinet failed to meet its burden for establishing grounds for termination because all of its court's testimony focused on past behavior without any significant evaluation of future parenting capacity. Under either section (e) or (g), which are quite similar, the Cabinet must establish by clear and convincing evidence that the mother is incapable of rendering such care in the future. They did not meet this evidentiary burden.

We are aware of the tender age of the children involved in this termination action. We know age is an important consideration and that more significant and quicker progress must be demonstrated when younger children are the subject of the termination of parental rights. But here, where M.E.C. has never emotionally or physically abused her children, her absence has been the result of incarceration and hospitalization, the Cabinet workers themselves testified as to the children's needs being met by M.E.C., and the Cabinet's failure to adjust services for the family outweigh the age factor and argue for additional services and help to ultimately reunite this family.

Thus, we find a lack of substantial evidence to support the trial court's termination judgment, and therefore, the order of termination was an abuse of discretion. We, hereby, vacate the termination judgment.

By vacating the termination judgment, we do not order that the children be immediately returned, but rather, hold that the Cabinet failed to meet its burden to establish grounds for termination. Obviously, time has passed and the Court does not know the current state of affairs with regards to M.E.C. and her children. If the Cabinet believes that it has sufficient grounds, now, to seek termination it is certainly within its authority to pursue the statutory procedure. Otherwise, all necessary statutory services should be rendered to help this family.

For the foregoing reasons, the orders of the family court terminating M.E.C.'s parental rights to N.L.J. and C.J.R. are vacated; and this case is remanded to the trial court for further proceedings consistent with this opinion.

ALL CONCUR.

---

1. This statute has now been amended and this provision is now KRS 625.090(2)(e).