RENDERED: DECEMBER 6, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0718-ME

D.O.L.                                                                          APPELLANT


APPEAL FROM BULLITT CIRCUIT COURT
v.        HONORABLE MONICA K. MEREDITH, JUDGE
ACTION NO. 23-AD-00019


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; C.M.F.; AND
D.T.L., A CHILD                                                      APPELLEES

AND

NO. 2024-CA-0720-ME

D.O.L.                                                                          APPELLANT


APPEAL FROM BULLITT CIRCUIT COURT
v.        HONORABLE MONICA K. MEREDITH, JUDGE
ACTION NO. 23-AD-00021


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; C.M.F.; AND
A.A.J.L., A CHILD                                                    APPELLEES

AND

NO. 2024-CA-0721-ME

D.O.L.                                                                    APPELLANT

                    APPEAL FROM BULLITT CIRCUIT COURT
v.                 HONORABLE MONICA K. MEREDITH, JUDGE
                        ACTION NO. 23-AD-00022

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; C.M.F.; AND
M.J.L., A CHILD                                                           APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ECKERLE AND A. JONES, JUDGES.

THOMPSON, CHIEF JUDGE:  In this consolidated appeal, D.O.L.[1] ("Father")

appeals from orders of the Bullitt Family Court terminating his parental rights as to

his three minor children.  Father argues that the family court erred in finding that

the Cabinet met its burden of proving, by clear and convincing evidence, the

---

[1] As this case involves minor children, we will use Appellant's initials and will not identify the children.

grounds for termination set forth in Kentucky Revised Statutes ("KRS") 625.090. After careful review, we find no error and affirm the orders on appeal.

## FACTS AND PROCEDURAL HISTORY

Father has three children with C.F. ("Mother"). In September 2020, the Cabinet for Health and Family Services ("the Cabinet") became involved with the family after it learned that the children were not enrolled in school. There were also allegations of Mother's substance abuse. At that time, the children were residing with Father and Mother in Nelson County, Kentucky.

Proceedings initiated by the Cabinet resulted in the placement of the children with relatives. In 2021, Mother absconded with the children and left Nelson County. The Cabinet had no contact with Mother until Cabinet representatives in Bullitt County, Kentucky, became involved in 2022, after allegations were made that Mother and the children were living with a convicted sex offender. Additional claims about Mother's substance abuse were also made.

On January 28, 2022, the Cabinet filed a petition for emergency custody in Bullitt Family Court based on information that Mother and the children were living with a registered sex offender. Father was not living with them at the time. One of the children had a cast on his left arm for 6 months longer than was medically recommended. The cast became attached to the child's arm to such a degree that surgery was required to remove it. The circuit court determined that

Father was not available to care for the children, so they were placed in foster care where they remained as of the time of the filing of this appeal.

On February 7, 2022, the Bullitt Family Court conducted a temporary removal hearing and continued placement with the Cabinet. The court ordered Father to participate in supervised visitation, to have a mental health assessment, and to undergo drug testing. The following month, the Cabinet filed an amended petition alleging that both parents failed to enroll the children in school and failed to get them vaccinated prior to placement in foster care. On April 14, 2022, Father stipulated to dependency and the children were committed to the Cabinet.

The Cabinet had continued involvement in the matter through 2022. A case plan was developed, with Father referred for mental health, drug abuse, and parenting assessments and education. During this time, Father was employed and paid child support. A Cabinet employee testified that Father and Mother had housing for themselves, though it was not large enough to accommodate the children.

Testimony was also adduced that the children struggled with fear and attachment issues, and that all three children expressed intense fear of Father due to prior physical abuse and intimidation. After Father's initial supervised visit with the children, the children were so traumatized that their therapist recommended terminating all contact with Father. A Cabinet employee later stated that while

Father could have provided letters, gifts, clothing, etc. to the children after his contact with them was terminated, he did not do so nor did he inquire as to their welfare.

On March 24, 2023, the Cabinet filed a petition for involuntary termination of parental rights against Father and Mother.[2] The matter was continued for almost a year, culminating in a bench trial conducted on March 8, 2024. On April 22, 2024, the family court rendered three orders terminating Father's and Mother's parental rights as to each of the children. In support of the orders, the court found that the elements of KRS 625.090 necessary for termination were satisfied by the record. This appeal followed.

## STANDARD OF REVIEW

The standard for review in termination of parental rights cases is set forth in *M.P.S. v. Cabinet for Human Resources*, 979 S.W.2d 114, 116-17 (Ky. App. 1998). Therein, it is established that this Court's standard of review in a termination of parental rights case is the clearly erroneous standard found in Kentucky Rules of Civil Procedure (CR) 52.01, which is based upon clear and convincing evidence. Hence, this Court's review is to determine whether the trial court's order was supported by substantial evidence on the record. And the Court will not disturb the trial court's findings unless no substantial evidence exists on the record.

Furthermore, although termination of parental rights is not a criminal matter, it encroaches on the parent's constitutional right to parent his or her child, and

---

[2] KRS 625.050.

therefore, is a procedure that should only be employed when the statutory mandates are clearly met. While the state has a compelling interest to protect its youngest citizens, state intervention into the family with the result of permanently severing the relationship between parent and child must be done with utmost caution. It is a very serious matter.

*M.E.C. v. Commonwealth, Cabinet for Health and Family Services*, 254 S.W.3d 846, 850 (Ky. App. 2008) (citations omitted).

## ARGUMENTS AND ANALYSIS

Father argues that the Bullitt Family Court erred in ordering the termination of his parental rights as to each of his three children.[3] He asserts that the Cabinet failed to prove by clear and convincing evidence that the best interests of the children would be served by terminating his parental rights. Father argues that the uncontroverted evidence presented at trial demonstrates that he was fully compliant with the Cabinet; that he completed his case plan; that he was providing support for the children on a consistent basis; and, that he maintained consistent contact with the children until he was cut off completely by a therapist. Additionally, Father contends that the Cabinet presented insufficient evidence to satisfy any requirements of KRS 625.090. He requests an opinion reversing the order terminating his parental rights.

---

[3] Mother does not appeal.

KRS 625.090, which sets forth the requirements for the involuntary termination of parental rights, states:

(1) The Circuit Court may involuntarily terminate all parental rights of a parent of a named child, if the Circuit Court finds from the pleadings and by clear and convincing evidence that:

(a) 1. The child has been adjudged to be an abused or neglected child, as defined in KRS 600.020(1), by a court of competent jurisdiction;

2. The child is found to be an abused or neglected child, as defined in KRS 600.020(1), by the Circuit Court in this proceeding;

. . .

(b) 1. The Cabinet for Health and Family Services has filed a petition with the court pursuant to KRS 620.180 or 625.050; or

2. A child-placing agency licensed by the cabinet, any county or Commonwealth's attorney, or a parent has filed a petition with the court under KRS 625.050; and

(c) Termination would be in the best interest of the child.

(2) No termination of parental rights shall be ordered unless the Circuit Court also finds by clear and convincing evidence the existence of one (1) or more of the following grounds:

(a) That the parent has abandoned the child for a period of not less than ninety (90) days;

(b) That the parent has inflicted or allowed to be inflicted upon the child, by other than accidental means, serious physical injury;

(c) That the parent has continuously or repeatedly inflicted or allowed to be inflicted upon the child, by other than accidental means, physical injury or emotional harm;

(d) That the parent has been convicted of a felony that involved the infliction of serious physical injury to any child;

(e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;

(f) That the parent has caused or allowed the child to be sexually abused or exploited;

(g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child;

(h) That:

    1. The parent's parental rights to another child have been involuntarily terminated;

2. The child named in the present termination action was born subsequent to or during the pendency of the previous termination; and

3. The conditions or factors which were the basis for the previous termination finding have not been corrected;

(i) That the parent has been convicted in a criminal proceeding of having caused or contributed to the death of another child as a result of physical or sexual abuse or neglect;

(j) That the child has been in foster care under the responsibility of the cabinet for fifteen (15) cumulative months out of forty-eight (48) months preceding the filing of the petition to terminate parental rights; or

(k) That the child has been removed from the biological or legal parents more than two (2) times in a twenty-four (24) month period by the cabinet or a court.

(3) In determining the best interest of the child and the existence of a ground for termination, the Circuit Court shall consider the following factors:

(a) Mental illness as defined by KRS 202A.011(9), or an intellectual disability as defined by KRS 202B.010(9) of the parent as certified by a qualified mental health professional, which renders the parent consistently unable to care for the immediate and ongoing physical or psychological needs of the child for extended periods of time;

(b) Acts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family;
(c) If the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the

petition made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents unless one or more of the circumstances enumerated in KRS 610.127 for not requiring reasonable efforts have been substantiated in a written finding by the District Court;

(d) The efforts and adjustments the parent has made in his circumstances, conduct, or conditions to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child;

(e) The physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered; and

(f) The payment or the failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so.

(4) If the child has been placed with the cabinet, the parent may present testimony concerning the reunification services offered by the cabinet and whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent.

(5) If the parent proves by a preponderance of the evidence that the child will not continue to be an abused or neglected child as defined in KRS 600.020(1) if returned to the parent the court in its discretion may determine not to terminate parental rights.

(6) Upon the conclusion of proof and argument of counsel, the Circuit Court shall enter findings of fact, conclusions of law, and a decision as to each parent-respondent within thirty (30) days either:

(a) Terminating the right of the parent; or

(b) Dismissing the petition and stating whether the child shall be returned to the parent or shall remain in the custody of the state.

To summarize, the trial court may terminate parental rights if it finds by clear and convincing evidence that, 1) the child has been found in a prior proceeding, or is found in the instant proceeding, to be an abused or neglected child; 2) termination is in the child's best interest; and, 3) at least one of the conditions set out in KRS 625.090(2)(a)-(k) exists. *See also Cabinet for Health and Family Services v. K.H.*, 423 S.W.3d 204, 209 (Ky. 2014).

The first question for our consideration is whether the Bullitt Family Court, or a predecessor court, found that the children were abused or neglected per KRS 625.090(1)(a)1. and (1)(a)2. For purposes of KRS Chapter 625, "abused or neglected child" means a child whose health or welfare is harmed or threatened with harm subject to any one of a number of factors. KRS 600.020(1). These factors include, for example, the infliction of physical or emotional injury (KRS 600.020(1)(a)1.), or the continuous failure to provide essential care and protection (KRS 600.020(1)(a)4.).

The Bullitt Family Court expressly found each of the children to be abused or neglected per KRS 625.090(1). The children claimed that Father was physically abusive, and their therapist found that they were highly traumatized as a result. The record also demonstrates that parties were at times homeless, and that

Father failed to intervene when the children were living with a sex offender. The court further found that both parents continuously or repeatedly failed to provide or have been substantially incapable of providing essential care and protection for the children, with no reasonable expectation of improvement. This finding comports with KRS 600.020(1)(a)4., and is amply supported by the record.

The next question is whether termination is in the children's best interest (KRS 625.090(1)(c) and (3)). In determining the children's best interest, the court is required to consider a number of factors including the mental illness of a parent, if any; acts of abuse or neglect; reasonable efforts toward reunification if placement has been made with the Cabinet; parental efforts and adjustments in support of reunification; the physical, emotional, and mental health of the children; and, the payment or failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so. KRS 625.090(3)(a)-(f).

In considering the children's best interest, the family court found that Father's mental health was not a significant factor in the proceedings. The family court did find, though, and the record so supports, Father's abuse or neglect of the children. This finding was based on the children being subjected to inappropriate discipline, the substance abuse of their caregivers, and the neglect of their material, emotional, and healthcare needs. The court also based its finding of abuse and neglect on both parents' failure or inability to comply with the court's remedial

orders and the Cabinet's court-approved case treatment plan so that the children could be safely returned to parental custody. The court went on to find that given the severity of the children's abuse and neglect while in parental custody, the physical and mental problems suffered by the children while with their parents, and the "enormous" amount of therapy and treatment the children received to attain their current level of function, further attempts at reunification were not warranted. The court also found that the children are "extremely bonded" to their foster family and wish to be adopted by them. We conclude that the record supports the family court's finding that termination of Father's parental rights is in the children's best interest.

The final element of the three-part test is whether at least one of the conditions set out in KRS 625.090(2)(a)-(k) exists. The family court determined that KRS 625.090(2) was satisfied sufficiently to support termination. We agree. The record demonstrates, for example, that Father continuously or repeatedly inflicted upon the children or allowed to be inflicted both physical injury and emotional harm. KRS 625.090(2)(c). The family court found that the child with his arm in a cast for six months longer than was medically necessary had to have surgery to remove the cast, and the injury was classified as a near fatality given the severity of the wound. While Father was not with the children at this time, he was aware of their whereabouts and took no action to prevent the physical and

-13-

emotional harm. In addition, the children's therapist found that emotional harm was inflicted on the children by Father to such a degree that contact between them should be halted. These findings, taken alone, are sufficient to satisfy KRS 625.090(2).

## **CONCLUSION**

As noted above, state intervention into the family with the result of permanently severing the relationship between parent and child is a very serious matter which must be done with utmost caution. *M.E.C.*, *supra*. With this in mind, and after thorough review of the record and the law, we conclude that substantial evidence supports the Bullitt Circuit Court's conclusion that, 1) the children were abused or neglected; 2) termination was in their best interest; and 3) at least one of the statutory conditions was met. *Id.*; KRS 625.090. For these reasons, we affirm the orders of the Bullitt Circuit Court terminating Father's parental rights.

ALL CONCUR.

BRIEF FOR APPELLANT:

Monica Shahayda
Shepherdsville, Kentucky

BRIEF FOR APPELLEE
COMMONWEALTH OF
KENTUCKY, CABINET FOR
HEALTH AND FAMILY
SERVICES:

Leslie M. Laupp
Covington, Kentucky