RENDERED:  SEPTEMBER 5, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0271-ME

B.W.M.                                                                                          APPELLANT

v.
APPEAL FROM FRANKLIN FAMILY COURT
HONORABLE SQUIRE WILLIAMS, III, JUDGE
ACTION NO. 24-AD-00019

CABINET FOR HEALTH AND
FAMILY SERVICES; E.K.M.
(A CHILD); AND K.R.M.                                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, KAREM, AND MOYNAHAN, JUDGES.

CETRULO, JUDGE:  B.W.M. ("Father") has appealed from the judgment of the
Franklin Family Court involuntarily terminating his parental rights to his daughter,
E.K.M. ("the Child").  We affirm.

## BACKGROUND

Father and K.S. ("Mother") are the natural parents of the Child, who
was born in 2019.  They were married and living together at the time of the Child's

birth. However, they later separated after a domestic violence incident in October 2020 when Father was alleged to have injured Mother and the Child's sibling. A no contact order was issued, and Father subsequently pled guilty to fourth-degree assault. Mother and Father separated, and Father testified he had not lived with the Child since she was three years of age.[1]

The Child was removed from Mother's care in 2022 when Mother was arrested for driving while intoxicated with the Child in the vehicle.[2] Father was in the hospital at the time of this event, and the Cabinet for Health and Family Services ("the Cabinet") obtained temporary emergency custody.

Shortly after obtaining temporary custody, the Cabinet negotiated a case plan with Father and Mother. Father's tasks included: maintain housing and employment; complete a mental health and substance abuse assessment and follow recommendations; complete parenting classes; maintain sobriety; refrain from any criminal activity; participate in monthly home visits with the Cabinet; complete random drug screens; and participate in supervised visitation.

By the time of an adjudication hearing in August 2023, an amended petition had been filed against Father alleging he had appeared under the influence

---

[1] Other testimony suggests he had not lived with the Child since 2020 due to the domestic violence incident.

[2] Mother has not appealed the termination of her parental rights.

during a supervised visit with the Child. Law enforcement was contacted, and Father tested above the legal limit on an alcohol breathalyzer test. Considering this, Father was further recommended to complete intensive outpatient treatment. Father then stipulated to a finding of neglect based on the allegations of the amended petition, and custody of the Child remained with the Cabinet.

On March 6, 2024, the Cabinet filed this action seeking to involuntarily terminate the parental rights of Father and Mother. A final hearing was held on December 16, 2024. At the hearing, the Cabinet presented testimony from the social worker. Both Father and Mother testified, but there were no other witnesses. In January 2025, the family court entered its findings of fact and conclusions of law and a judgment terminating the rights of Father and Mother to the Child. This appeal followed.

On appeal, Father asserts only one issue, that the family court erred in finding it was in the Child's best interest to terminate his parental rights.

**STANDARD OF REVIEW**

We use the clearly erroneous standard when reviewing whether the family court lawfully terminated parental rights. *C.J.M. v. Cabinet for Health & Fam. Servs.*, 389 S.W.3d 155, 160 (Ky. App. 2012). "Pursuant to this standard, an appellate court is obligated to give a great deal of deference to the family court's findings and should not interfere with those findings unless the record is devoid of

substantial evidence to support them." *Cabinet for Health & Fam. Servs. v. K.H.*, 423 S.W.3d 204, 211 (Ky. 2014) (quoting *Commonwealth, Cabinet for Health & Fam. Servs. v. T.N.H.*, 302 S.W.3d 658, 663 (Ky. 2010)); *see also* Kentucky Rule of Civil Procedure ("CR") 52.01.  However, the statutory scheme of Kentucky Revised Statute ("KRS") 625.090 provides that before a circuit court may terminate parental rights, it must find by clear and convincing evidence that a tri-part test has been satisfied:  "(1) the child is found or has been adjudged to be an abused or neglected child as defined in KRS 600.020(1); (2) termination of the parent's rights is in the child's best interests; and (3) at least one of the termination grounds enumerated in KRS 625.090(2)(a)-[(k)] exists."[3]  *K.H.*, 423 S.W.3d at 209.  This Court has held that the "best interest of the child" prong of the above tri-part test is reviewed for abuse of discretion.  *D.J.D. v. Cabinet for Health & Fam. Servs.*, 350 S.W.3d 833, 837 (Ky. App. 2011) (citing *Young v. Holmes*, 295 S.W.3d 144, 146 (Ky. App. 2009)).  Absent a showing that the decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles, a trial court's determination regarding the best interest of the child will generally be sustained.  *Id.* (citing *Miller v. Harris*, 320 S.W.3d 138, 141 (Ky. App. 2010)).

---

[3] *See* H.B. 446, 2019 Gen. Assemb., Reg. Sess. (Ky. 2019) (adding subsection "k" to KRS 625.090(2)).

# ANALYSIS

Father argues that the family court failed to sufficiently support part two of the analysis in determining it was in the Child's best interest to terminate his rights.[4] As such, we will focus solely on the findings as to the Child's best interest. "Any part of a judgment appealed from that is not briefed is affirmed as being confessed." *Osborne v. Payne*, 31 S.W.3d 911, 916 (Ky. 2000) (citation omitted).

Kentucky Revised Statute 625.090(3)(a)-(f) dictate that the family court shall consider the following factors when determining a child's best interest:

> (a) Mental illness as defined by KRS 202A.011(9), or an intellectual disability as defined by KRS 202B.010(9) of the parent as certified by a qualified mental health professional, or a disability as defined in KRS 199.011, if the mental illness, intellectual disability, or disability renders the parent consistently unable to care for the immediate and ongoing physical or psychological needs of the child for extended periods of time;
>
> (b) Acts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family;
>
> (c) If the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the petition:
>
>> 1. Made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents unless one or more of the circumstances enumerated in KRS 610.127 for not requiring reasonable efforts

---

[4] There is no argument with the family court's finding of neglect, as Father stipulated to that, and the findings include recitations of at least two of the 11 factors set forth in KRS 625.090(2).

> have been substantiated in a written finding by the District Court; or
>
> . . . .
>
> (d) The efforts and adjustments the parent has made in his or her circumstances, conduct, or conditions to make it in the child's best interest to return the child to his or her home within a reasonable period of time, considering the age of the child;
>
> (e) The physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered; and
>
> (f) The payment or the failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so.

Importantly, the family court need not specifically address each factor for the findings to "lead us to believe that each factor was properly considered." *K.H.*, 423 S.W.3d at 212 (citing *D.G.R. v. Commonwealth, Cabinet for Health & Fam. Servs.*, 364 S.W.3d 106, 115 (Ky. 2012)). However, here, the family court's judgment specifically addressed each of these factors, as quoted below:

> The first factor involves whether the parent has been properly diagnosed with mental illness or mental retardation. KRS 625.090(3)(a). This factor was not a significant issue in this action.
>
> Regarding the second factor, for "acts of abuse or neglect . . . toward any child in the family," KRS 625.090(3)(b), the totality of the evidence presented at trial is sufficient to convince this Court that the Petitioner child has been abused or neglected within the meaning of KRS 600.020(1). This resulted from the Petitioner child being

subjected to scenes of domestic violence in the home, to substance abuse by her parents, and to neglect of her material, emotional, and healthcare needs. The Petitioner child has been further abused or neglected by the Respondent parents' failure or inability to comply with this Court's remedial orders and the Cabinet's court-approved case treatment plan so that the Petitioner child could be safely returned to parental custody, and by the failure or inability of the Respondent parents to do what is necessary to materially support her.

Regarding the third factor, for the Cabinet's "reasonable efforts . . . to reunite the child with the parent" KRS 625.090(3)(c), it is clear to this Court that the Cabinet made appropriate referrals to substance abuse counseling, parenting classes, random drug screens, supervised visitation sessions, mental health counseling, and various other services. The Cabinet social worker testified that, under the circumstances of this case, she was unaware of any other services which the Cabinet could provide or refer the Respondent parents to that would allow for the safe reunification of the Respondent parents with the Petitioner child within a reasonable period, considering the age of the child. With due consideration given to the next factor, set forth in KRS 625.090(3)(d), this Court agrees.

The next, fourth, factor concerns "[t]he efforts and adjustments the parent has made in his circumstances, conduct, or conditions to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child[.]" KRS 625.090(3)(d). Regarding this factor, the Cabinet's caseworker testified that as of the date of the filing of the petition in this TPR action, the Respondent parents have not been fully compliant with the Court's remedial orders out of the aforesaid DNA actions, particularly with respect to completion of drug screens, substance misuse treatment, and finding stable homes. As a result of all the foregoing

and more, the Petitioner child has been unable to return safely to parental custody and care.

Regarding the fifth factor, set forth in KRS 625.090(3)(e), it is clear to this Court that the Petitioner child's physical, mental, and emotional needs have been met while in the Cabinet's care and custody and the child is expected to make continuing improvements in these areas upon termination of parental rights. The Cabinet social worker testified that she has visited regularly with the Petitioner child in the foster home and the child is doing much better since removal from parental custody and is attached to the foster parents, who are available to adopt her.

The final factor this Court is required to consider is the parent's "payment or . . . failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so." KRS 625.090(3)(f). As noted above, the Respondent parents have not paid any substitute financial assistance since the Petitioner child has been in state care.

Father suggests that *M.E.C. v. Commonwealth, Cabinet for Health and Family Services*, 254 S.W.3d 846 (Ky. App. 2008), required the family court to afford him further opportunity to work with the Cabinet before terminating his parental rights. In *M.E.C.*, the family court granted the Cabinet's petition for the involuntary termination of a mother's parental rights only eight months after her children had been removed from her care and placed in the Cabinet's custody. *Id.* at 850. On appeal, a panel of this Court vacated the trial court's order and remanded the matter for further proceedings based, in part, upon the Cabinet's failure to make reasonable efforts as defined in KRS 620.020 to reunite the

children with the parents prior to filing a petition to terminate parental rights. *Id.* at 854-55.

Here, the Child has been in Cabinet custody since December 2022. There is no argument here, nor was there any evidence presented below, that the Cabinet did not make reasonable efforts to reunify Father with the Child. Rather, the evidence was undisputed that the Cabinet did offer and provide assistance and services for a period of more than two years. Father did make some strides in completing his case plan, but he also failed to make progress in other ways. He had been scheduled to attend 100 drug screens as of the time of trial and had failed to show 66 times. Of the 34 he did attend, 16 were positive for alcohol or marijuana. Although he testified that he had signed a lease for a new apartment three days prior to the trial, he had lived in several places since the Child's removal and did not yet feel he was able to currently care for the Child. He has not provided any support and has not gone to any of the Child's school activities. At the time of the hearing, he was not sure when he had last used alcohol or marijuana. He had not undergone drug screens for several months. He had started "counseling" only a week or two prior to the hearing. He was essentially just asking for more time and, as asserted in his brief, he knew he still had work to do. The Child was doing well in foster care and all needs were being met. Father testified that the Child was "in the best place she needed to be" at the present time.

The expectation of parental improvement is to be viewed in consideration of the Child's age and, as this Court has found, "more significant and quicker progress must be demonstrated when younger children are the subject of the termination of parental rights." *M.E.C.*, 254 S.W.3d at 855.

Here, the record demonstrates the Cabinet made reasonable efforts to reunite Father with the Child, who has not lived with him for ***over three years***, and Father admitted he still was not able to begin parenting. While we applaud his recent efforts, this case is not akin to the extenuating circumstances found to be insufficient for termination in *M.E.C.*

We believe the family court's conclusion that termination of Father's parental rights was in the Child's best interest, was supported by substantial evidence, and was not an abuse of discretion. Accordingly, the judgments of the Franklin Family Court are AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT:

James Dean Liebman
Frankfort, Kentucky

BRIEF FOR APPELLEES CABINET FOR HEALTH AND FAMILY SERVICES AND GUARDIAN *AD LITEM*:

Leslie M. Laupp
Covington, Kentucky

W. Steven Middleton
Frankfort, Kentucky