RENDERED: JANUARY 30, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1527-ME

J.H.      APPELLANT

APPEAL FROM BOONE CIRCUIT COURT
v.      HONORABLE JENNIFER R. DUSING, JUDGE
ACTION NO. 24-AD-00008

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; H.N.H., A
MINOR CHILD; AND N.L.D.      APPELLEES

AND

NO. 2024-CA-1528-ME

N.L.D.      APPELLANT

APPEAL FROM BOONE CIRCUIT COURT
v.      HONORABLE JENNIFER R. DUSING, JUDGE
ACTION NO. 24-AD-00008

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND

FAMILY SERVICES; H.N.H., A
MINOR CHILD; AND J.H.                                          APPELLEES

### OPINION
### AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, L. JONES, AND LAMBERT, JUDGES.

JONES, L., JUDGE:  N.L.D. (Mother) and J.H. (Father) (collectively Parents) filed

separate appeals from the November 14, 2024 order of the Boone Family Court

terminating their parental rights (TPR) to daughter, H.N.H. (Child).[1] In accordance

with *A.C. v. Cabinet for Health and Family Services*, 362 S.W.3d 361 (Ky. App.

2012), counsel for both Parents filed *Anders*[2] briefs contending that no meritorious

assignment of error exists to present to this Court.  Accompanying their briefs,

counsel for Mother and Father filed motions to withdraw.

Counsel for Mother and Father also certified they had informed their

respective clients of their right to file supplemental *pro se* briefs. In accordance

with *A.C.*, this Court entered orders in each respective appeal, granting both

Mother and Father thirty days to file a supplemental brief and passing the motions

---

[1] To protect the privacy of the minor child, we will refer to the child and her natural parents by their initials or "Mother," "Father," and "Child."

[2] *Anders v. California*, 386 U.S. 738 (1967).

to withdraw to this merits panel.[3] Neither Mother nor Father filed any supplemental brief. With all briefs submitted, this Court is charged to "fully examine the record and decide whether the appeal is wholly frivolous[.]" *A.C.*, 362 S.W.3d at 371. Having independently reviewed the record, as well as having fully considered the briefs, we affirm the Boone Family Court. By separate orders, we also grant both motions to withdraw.

## FACTUAL AND PROCEDURAL BACKGROUND

Child was born September 15, 2018. The Cabinet for Health and Family Services (Cabinet) became involved with Parents and Child in February 2019 after receiving reports of substance misuse by Parents. Moreover, Mother tested positive for illegal substances while pregnant with Child. On April 29, 2019, the Cabinet filed a Juvenile Dependency, Neglect, or Abuse (JDNA) Petition in Boone Family Court, alleging that Child was a dependent child[4] due to substance misuse by Parents. On May 2, 2019, temporary custody of Child was granted to C.F., Mother's uncle.[5] On May 30, 2019, both parents stipulated to neglect. On June 13, 2019, both parents were given disposition plans, which included

---

[3] *See A.C.*, 362 S.W.3d at 371 ("Upon receiving counsel's motion to withdraw and accompanying *Anders* brief, this Court shall enter an order granting the indigent parent thirty days to file a *pro se* brief and deferring counsel's motion to withdraw to the merits panel.").

[4] The petition was later amended to allege that Child was a neglected child.

[5] Two other children of Parents were removed and placed in C.F.'s care. Both of those children had become adults by the time the TPR petition in the present case was filed.

-3-

submitting to random drug screens, completing substance abuse assessments and following recommendations, and completing mental health assessments and following all recommendations. At some point, Mother was allowed to reside in C.F.'s home with Child, but all contact between Mother and Child was to be supervised.

Due to Parents' non-compliance with their case plans, the Cabinet closed their cases in August 2021. At a review hearing on November 18, 2021, the Family Court ordered the Cabinet to re-engage with the family. Parents' progress on their case plans remained inconsistent. Furthermore, in addition to pleading guilty to several misdemeanor offenses, Father was granted felony diversion on one count of Possession of a Controlled Substance in the First Degree.

On September 12, 2022, the Cabinet filed a second JDNA petition alleging that C.F. allowed Mother to be unsupervised with Child, and that Mother was non-compliant with her case plan, including missing drug screens.[6] The petition further alleged that at her last drug screen several months earlier, she tested positive for substances not prescribed to her. On September 15, 2022, the first court appearance after filing the second JDNA petition, Mother was ordered to leave C.F.'s home and have her parenting time supervised by the Cabinet.

---

[6] There were no allegations against Father in this petition. Mother stipulated to a finding that the Child was dependent.

A third JDNA petition was filed just over a week later, on September 23, 2022. That petition alleged that C.F. reported he was unable to care for Child without help, that he knew of Mother's non-compliance with court orders and her case plan, and that he failed to inform the Cabinet. The petition further alleged that C.F. had allowed other adults (specifically Mother's adult daughter and boyfriend) to use drugs in his home.[7] Child was removed from C.F. and placed with the Cabinet. Child was committed to the Cabinet on November 17, 2022. Parents were granted supervised visitation every other week and consistently exercised that visitation.

After Child was committed to the Cabinet, Parents' progress with their case plans remained inconsistent at best. Prior to the filing of the TPR petition, Parents were discharged from BrightView (a substance addiction treatment facility) multiple times for non-compliance. Both parents were also discharged from UK TAP[8] for non-compliance. In addition, she missed random drug screenings and tested positive for illegal substances at some screenings she did complete. Mother also failed to complete a mental health assessment as ordered. Mother also made threats against a Cabinet worker, Madison Evans.

---

[7] No allegations were made against either Mother or Father in this JNDA petition. C.F. stipulated to a finding that the Child was dependent.

[8] University of Kentucky Targeted Assessment Program.

Father refused to meet with the Cabinet worker, and was in arrears for support obligations for Child, despite his lottery winnings.

On January 30, 2024, the Cabinet filed a petition for involuntary termination of parental rights. The family court held a bench trial on TPR on September 24, 2024 and October 16, 2024. Both parents were present with counsel. The Cabinet's sole witness was Ms. Evans. Ms. Evans testified about how the Cabinet originally became involved in the case, how the Child came into the Cabinet's care, the case plans developed for Parents, and Parents' inconsistent progress in those plans.

Ms. Evans noted that neither parent had participated in the care of Child for at least ninety days nor had either Parent provided support. Ms. Evans also testified that the Cabinet made reasonable efforts for Child to return to Parents, but such services were unsuccessful due to Parents' actions and that more services would not be reasonable. Ms. Evans further testified that Child was doing well in her current placement, that Child would likely be adopted, and that Child had formed an attachment to the prospective adoptive family.

At the TPR hearing, Mother testified that after the filing of the TPR petition, she had engaged with BrightView again and was now attending therapy. Mother also testified that she began parenting classes in September 2024. Mother testified that she was taking Suboxone and admitted to having used Suboxone in

the past without a prescription. Mother also admitted to being discharged from UK TAP several times for non-compliance. Regarding housing and income, Mother testified that she took side jobs cleaning but was seeking full-time employment and that she resided with a family friend.

Mother also offered the testimony of Eileen Moore, a therapist with Cultivate Behavioral Health, and Skyler Dreyer, Mother's case manager at BrightView. Ms. Moore testified that she had diagnosed Mother with anxiety and depression and that Mother was attentive and engaged in therapy. Ms. Dreyer testified that Mother had made progress at BrightView during her latest attempt at the program and that her attendance was good, though Ms. Moore testified that Mother tested positive to a controlled substance to which she was not prescribed on September 19, 2024.

Father testified that he was also enrolled at BrightView, being treated for substance use disorder of opiates. Father testified that he was drug screened monthly by BrightView, though admitted to testing positive for gabapentin that he had obtained from a friend for a headache. Father testified that he was not in any therapy because it had not been recommended by BrightView and that he had not attended any AA or NA meetings. Father further claimed to have completed UK TAP in May 2024.

Father also acknowledged he had received a net payout of $177,000 for a lottery winning in February 2022. Rather than use that money to support Child, Father used the fund to take several months off work, purchase vehicles for various family members (including Mother), and make a down payment on a home in 2024. By the time of the TPR hearing, none of the lottery funds remained and he had child support arrears.

On November 14, 2024, the family court entered extensive, well-written and well-reasoned findings of fact and conclusions of law, finding that pursuant to Kentucky Revised Statute (KRS) 625.090 Child was an abused and neglected child, that termination of parental rights of Mother and Father was in Child's best interest, and that: (1) Parents, for a period of not less than six months, had repeatedly failed or refused to provide or had been substantially incapable of providing essential parental care and protection of Child, and there was no reasonable expectation of improvement in parental care and protection, considering the age of the child; (2) Parents had, for reasons other than poverty alone, continuously or repeatedly failed to provide essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and there was no reasonable expectation of significant improvement in Parents' conduct in the immediately foreseeable future, considering the age of Child; and (3) Child had been in foster care under the responsibility of the Cabinet

for fifteen cumulative months out of the forty-eight months preceding the filing of the TPR petition. Along with its findings, the family court entered a written order terminating the parental rights of Mother and Father. Both made a timely appeal.

## STANDARD OF REVIEW

KRS 625.090 governs TPR. Before parental rights may be terminated under that statute, the trial court must find by clear and convincing evidence that a tripart test has been satisfied: "(1) the child is found or has been adjudged to be an abused or neglected child as defined in KRS 600.020(1); (2) termination of the parent's rights is in the child's best interests; and (3) at least one of the termination grounds enumerated in KRS 625.090(2)(a)-[(k)] exists." *Cabinet for Health and Fam. Services v. K.H.*, 423 S.W.3d 204, 209 (Ky. 2014).

As observed by a prior panel of this Court in *M.E.C. v. Cabinet for Health and Family Services*, 254 S.W.3d 846, 850 (Ky. App. 2008):

> [A]lthough termination of parental rights is not a criminal matter, it encroaches on the parent's constitutional right to parent his or her child, and therefore, is a procedure that should only be employed when the statutory mandates are clearly met. While the state has a compelling interest to protect its youngest citizens, state intervention into the family with the result of permanently severing the relationship between parent and child must be done with utmost caution.

Even so, "[b]ecause termination decisions are so factually sensitive, appellate courts are generally loathe to reverse them, regardless of the outcome."

*D.G.R. v. Cabinet for Health and Fam. Services*, 364 S.W.3d 106, 113 (Ky. 2012). Indeed, "[t]his Court's standard of review in a termination of parental rights action is confined to the clearly erroneous standard in CR[9] 52.01 based upon clear and convincing evidence[.]" *M.P.S. v. Cabinet for Human Resources*, 979 S.W.2d 114, 116 (Ky. App. 1998). In reviewing whether or not the trial court's factual findings are clearly erroneous, this Court looks at "whether or not those findings are supported by substantial evidence." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). "[S]ubstantial evidence is [e]vidence that a reasonable mind would accept as adequate to support a conclusion and evidence that, when taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." *Id.* (internal quotation marks and citations omitted). "[T]he findings of the trial court will not be disturbed unless there exists no substantial evidence in the record to support its findings." *M.P.S.*, 979 S.W.2d at 116. Furthermore, "[t]he trial court has a great deal of discretion in determining whether the child fits within the abused or neglected category and whether the abuse or neglect warrants termination." *Id.*

That being said, the best interest of the child prong of the tripart test is reviewed for abuse of discretion. *D.J.D. v. Cabinet for Health and Fam. Services*, 350 S.W.3d 833, 837 (Ky. App. 2011). "Absent a showing that a decision was

---

[9] Kentucky Rules of Civil Procedure.

arbitrary, unreasonable, unfair, or unsupported by sound legal principles, a [trial] court's determination [regarding best interests of the child] will not be an abuse of discretion and will be sustained." *Id.*

## ANALYSIS

We conclude after our independent view of the record that the family court's findings of fact and conclusions of law are not erroneous. Under the first prong, the family court noted that both parents admitted to neglect in the first JDNA petition, leading the family court to make a finding that the Child was neglected. Such finding satisfies the first prong of the tripart test. *See* KRS 625.090(1)(a).

In determining whether TPR would be in the Child's best interests, KRS 625.090(3) as it existed at the time of TPR[10] provided six factors for the family court to consider:

> (a) Mental illness as defined by KRS 202A.011(9), or an intellectual disability as defined by KRS 202B.010(9) of the parent as certified by a qualified mental health professional, which renders the parent consistently unable to care for the immediate and ongoing physical or psychological needs of the child for extended periods of time;
>
> (b) Acts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family;

---

[10] KRS 625.090(3) was amended in 2025 after TPR proceedings were complete. *See* 2025 Ky. Acts ch. 26, § 6 (eff. Jun. 27, 2025). None of those amendments would apply to Parents.

-11-

(c) If the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the petition made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents unless one or more of the circumstances enumerated in KRS 610.127 for not requiring reasonable efforts have been substantiated in a written finding by the District Court;

(d) The efforts and adjustments the parent has made in his circumstances, conduct, or conditions to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child;

(e) The physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered; and

(f) The payment or the failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so.

KRS 625.090(3).

The trial court analyzed those factors in its findings regarding the best interest of Child and took into account the reasonable efforts of the Cabinet for unification, the failure of Parents to make progress on their case plans, the lack of financial support by either parent (especially Father, given his lottery winnings), Child's progress in her placement as well as her attachment to the prospective adoptive parents, and the likelihood that additional services would not bring about parental adjustments to allow return of the Child within reasonable time. The trial

-12-

court concluded that TPR would be in Child's best interest, and we find no abuse of discretion in the trial court's findings.

Finally, before parental rights can be terminated, at least one of eleven statutory grounds under KRS 625.090(2) must be established by clear and convincing evidence. The family court found three of those grounds existed, namely that: (1) Parents had for a period of not less than six months continuously or repeatedly failed or refused to provide or had been substantially incapable of providing essential parental care and protection for the Child and there is no reasonable expectation of improvement in parental care and protection, considering the age of the Child (KRS 625.090(2)(e)); for reasons other than poverty alone, Parents had continuously or repeatedly failed to provide or were incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for Child's well-being and that there is no reasonable expectation of significant improvement in Parents' conduct in the immediately foreseeable future, considering the age of Child (KRS 625.090(2)(g)); and Child had been in foster care under the responsibility of the Cabinet for fifteen cumulative months out of forty-eight months preceding the filing of the TPR petition (KRS 625.090(2)(j)). As set forth, *supra*, there is substantial evidence to support all three findings.

# CONCLUSION

While we note that both Mother and Father took some steps towards their case plan and improving themselves after the TPR petition was filed, our task is not to determine whether we would come to a different conclusion. Rather our task is to determine whether the family court's decision was supported by substantial evidence. Upon our independent review, we are satisfied that the family court's conclusions are sound. We view any remaining contentions of error as moot, unpersuasive, unpreserved, or without merit. Thus, for the foregoing reasons, the judgment of the Boone Family Court is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT J.H.:

Matthew M. Woods
Ft. Wright Kentucky

BRIEF FOR APPELLANT N.L.D.:

Erin M. Melcher Beam
Cynthiana, Kentucky

BRIEFS FOR APPELLEE
COMMONWEALTH OF
KENTUCKY, CABINET FOR
HEALTH AND FAMILY
SERVICES:

Leslie M. Laupp
Covington, Kentucky