v.

H.A. and F.A., Kentucky Cabinet for Human Resources, M.L.A., an infant, and J.A., Appellees.

Court of Appeals of Kentucky.

June 12, 1987.

---

James W. Herald, Whitesburg, Guardian Ad Litem for appellant L.B.A.

Peyton F. Reynolds, Whitesburg, for appellees H.A. and F.A.

James T. Wood, Jr., Whitesburg, Guardian Ad Litem for appellee M.L.A.

Before DYCHE, MILLER and WEST, JJ.

DYCHE, Judge.

L.B.A. is the natural mother of M.L.A., who was born on December 3, 1984; the mother of the child was never allowed to leave the hospital with her baby, as on December 10, 1984 the child was placed in the custody of her paternal grandparents by order of the Letcher District Court. On August 15, 1986 the Letcher Circuit Court entered a judgment terminating L.B.A.'s parental rights and granting the adoption of M.L.A. by the paternal grandparents.[1]

In that initial judgment, the court recited that the adoptive parents had "established by a preponderance of the evidence that the [natural mother had] abandoned or neglected her child pursuant to KRS 199.603 § 1." Subsequently, the judgment was amended to read,

> by clear and convincing evidence it has been shown that the defendant mother herein, by reason of her severe mental

deficiency has unintentionally abandoned or neglected the infant defendant, and by reason of the mental deficiency of the defendant mother, she is consistently unable to care for the immediate and ongoing physical or psychological needs of the infant defendant for extended periods of time.

It is from this judgment L.B.A. now appeals.

KRS 199.603(1) provides for the termination of parental rights if it is proved that the "termination is in the best interest of the child based on the existence of one (1) or both of the following conditions: (a) The child has been abandoned; or (b) The child has been substantially or continuously or repeatedly neglected or abused."

It is unquestioned that the best interest of the child is a major factor to be considered in resolving a case involving termination of parental rights; but the Supreme Court of the United States has recognized that the rights of the natural mother must also be given weight.

> The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed "essential," ... "basic civil rights of man," ... and "[r]ights far more precious ... than property rights." The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, ... and the Ninth Amendment. (citations omitted.)

*Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972).

■ The trial court ruled in its amended judgment that L.B.A. had unintentionally abandoned or neglected M.L.A., "by reason of her severe mental deficiency." We deem this finding difficult, if not impossible, to justify, considering the fact that L.B.A. was not given the opportunity to have custody of her baby for even one minute following its birth.

---

1. L.B.A. and the natural father were granted a divorce by the Letcher Circuit Court on May 6, 1985, at which time L.B.A. was awarded custody of M.L.A. The father subsequently executed a sworn consent to adoption.

This finding by the court is based solely on the testimony of one witness, a psychologist who was called on behalf of L.B.A. When the testimony of that witness is looked at as a whole, we find that it establishes that L.B.A. *was* able to perform adequately as a mother, in her situation as it then existed. This interpretation of the psychologist's testimony is buttressed by a written report filed as an exhibit which states "At this time, with her level of functioning, and her current support systems, [L.B.A.] is able to function adequately in her world and perform the duties required of her as a daughter and mother." (There was evidence that L.B.A.'s "current support system" [her family] was subject to behavioral fluctuations which could very easily deprive her of the aid necessary to properly care for M.L.A.)

Even if we should assume, then, that clear and convincing evidence establishes that the baby M.L.A. had been abandoned, or substantially or continuously or repeatedly neglected, the statute [KRS 199.603(3)] requires the court to consider various factors in determining the best interests of the child. Looking at these factors together, it is obvious that reunification of parent and child is to be considered, if at all possible; and the statute makes the Cabinet for Human Resources responsible for providing services to the family in order to facilitate this family reintegration.

█ The record in this case discloses no such services provided to this family, and no effort whatsoever expended in preventing the separation of mother and child. Such failure resulted in no less drastic alternatives than termination and adoption being presented to the court. This "all or nothing" approach is a violation of statutory mandate and constitutional right.

Where certain "fundamental rights" are involved, the Court has held that regulation limiting these rights may be justified only by a "compelling state interest," ... and that legislative enactments must be narrowly drawn to express only the legitimate state interests at stake. (citations omitted.)

*Roe v. Wade*, 410 U.S. 113, 155, 93 S.Ct. 705, 728, 35 L.Ed.2d 147 (1973). In this case, the compelling state interest is protection of the child; the fundamental right is that of raising one's child. The legislation has been narrowly drawn, but in this case improperly applied; less drastic measures *must* be considered by the court prior to granting termination and involuntary adoption. It may be that termination of L.B.A.'s parental rights and the adoption of M.L.A. are the ultimate result; prior to this, however, efforts must be made to determine if it can be avoided.

We do not order, nor even suggest, immediate return of M.L.A. to the unsupervised custody of L.B.A. The circuit court should exercise its discretion under KRS 199.603(3)(d) and (h) and order the Cabinet for Human Resources to provide services to L.B.A. "to facilitate a reunion" and determine whether, after a reasonable period, "additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time."

If such a return cannot be effectuated, the court should then have a hearing on termination under the dictates of KRS 199.603, *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and *N.S. v. C and M.S.*, Ky., 642 S.W.2d 589 (1983).

Accordingly, the judgment of the Letcher Circuit Court is vacated and this case is remanded for proceedings not inconsistent with this opinion.

Further, pursuant to 2.(a) of the Order designating the case as a Special Appeal, the application of CR 76.20 and CR 76.32, as well as other appropriate Rules of Civil Procedure pertaining to further appellate steps, are reinstated effective the date of this opinion.

All concur.