RENDERED:  DECEMBER 20, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2024-CA-0046-ME

T.S.L.J.                                                          APPELLANT

v.
APPEAL FROM GRAVES CIRCUIT COURT
HONORABLE KEVIN D. BISHOP, JUDGE
ACTION NO. 23-AD-00027

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; L.M.C., A
CHILD; AND R.J.N., JR.                                           APPELLEES

AND

NO. 2024-CA-0047-ME

T.S.L.J.                                                          APPELLANT

v.
APPEAL FROM GRAVES CIRCUIT COURT
HONORABLE KEVIN D. BISHOP, JUDGE
ACTION NO. 23-AD-00028

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; C.J.C.; AND
D.J.D.W., A CHILD                                                 APPELLEES

AND

NO. 2024-CA-0049-ME

T.S.L.J.                                                                                          APPELLANT


                              APPEAL FROM GRAVES CIRCUIT COURT
v.                            HONORABLE KEVIN D. BISHOP, JUDGE
                              ACTION NO. 23-AD-00029


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; C.J.C.; AND
K.J.D.C., A CHILD                                                                            APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, LAMBERT, AND MCNEILL, JUDGES.

MCNEILL, JUDGE:  In these three consolidated appeals, T.S.L.J. ("Mother")

appeals from the Graves Circuit's decisions terminating her parental rights to

L.M.C. ("younger son"), D.J.D.W. ("older son"), and K.J.D.C. ("daughter")

(collectively "the Children").  We affirm.

        Daughter was born in 2018.  Older son was born in 2019.  Younger

son was born in 2020.  In 2020, shortly before younger son's birth, the authorities

saw a vehicle linked to a person for whom an active warrant existed parked at the residence of Mother's mother ("Grandmother"). Because Grandmother's home was in deplorable condition, law enforcement alerted the Cabinet for Health and Family Services ("the Cabinet") that Mother and Daughter were present. Mother admitted at the final termination hearing that Grandmother's home was "terrible" but claimed she was not residing there at that point in 2020. According to Mother, she was only there to try to clean Grandmother's home.

The Cabinet filed a petition for removal of the Children from Mother's care. The petition was granted, and the children have been in the Cabinet's custody continuously since October 2020. Mother was under a guardianship due to her perceived inability to care for herself. The Cabinet formulated a case plan for Mother which required her to, among other tasks, complete parenting classes and obtain and maintain appropriate housing. In April 2023, the Cabinet filed petitions to terminate Mother's parental rights as to each of the three Children.[1] The Graves Circuit Court held a combined final hearing on the Cabinet's three petitions in December 2023.

---

[1] The Cabinet also successfully sought to terminate the parental rights of the Children's respective fathers. Neither father has appealed those decisions.

In 2022, Mother moved into an assisted living facility in Owensboro, Kentucky where she remained until her guardianship ended around June 2023.[2] While Mother resided at the Owensboro facility, Sarah Andrus, a regional administrator employed by the Cabinet, twice per month transported the Children to Mother for visits before switching to transporting Mother to the Children. Those trips were about two hours each way and each visit lasted about an hour.

Andrus testified that during the visits Mother was more focused on her own needs than those of the Children. Andrus testified that Mother struggles with basic parenting tasks and cannot safely parent the Children. Perla Henry, a social services clinician employed by the Cabinet assigned to Mother's case since June 2021, similarly testified that the Children could not be returned to Mother and terminating Mother's parental rights to the Children was in their best interests.

Mother has been living in Grandmother's home after leaving the facility in Owensboro. Andrus testified Grandmother's home was not safe or appropriate for the Children. Henry similarly testified that she had told Mother that the Children cannot live in Grandmother's home.

In her testimony, Mother stated she did not want to remain at a facility when her guardianship ended but Grandmother's home was Mother's only viable housing option. Mother also testified that her guardian had advised her to move in

---

[2] Mother continued to have a conservator to help her manage her financial affairs.

with Grandmother after leaving the facility. Andrus testified that Mother's guardian had mistakenly believed Mother's case plan required her to live with Grandmother after leaving the facility. Mother testified she had applied for public housing but there was a significant waitlist for that housing.

Henry testified that the Cabinet had made all reasonable efforts to reunify Mother with the Children and there was nothing else the Cabinet could realistically do to assist Mother in regaining custody. Mother similarly answered in the affirmative when asked if the Cabinet had made reasonable efforts to reunify her with the Children.

On the other hand, there was testimony favorable to Mother. For example, testimony showed she had recently completed parenting classes. Apparently, for unclear reasons, Mother's guardian had not allowed her to take parenting classes. Andrus testified that Mother had made some progress, though Mother still focused primarily on herself during visits. Two of Mother's sisters also briefly testified about improvements they perceived Mother had made.

The trial court granted all three termination petitions. Mother then filed these three appeals, one for each child, which we have consolidated.

A "trial court has wide discretion in terminating parental rights." *Cabinet for Health and Family Services v. K.H.*, 423 S.W.3d 204, 211 (Ky. 2014). As such, "our review is limited to a clearly erroneous standard which focuses on

whether the [trial] court's order of termination was based on clear and convincing evidence." *Id.* (citing Kentucky Rule of Civil Procedure ("CR") 52.01). "Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent minded people." *M.S.S. v. J.E.B.*, 638 S.W.3d 354, 360 (Ky. 2022) (citation omitted). "Pursuant to this standard, an appellate court is obligated to give a great deal of deference to the family court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them." *Cabinet for Health and Family Services v. T.N.H.*, 302 S.W.3d 658, 663 (Ky. 2010). "Because termination decisions are so factually sensitive, appellate courts are generally loath[] to reverse them, regardless of the outcome." *D.G.R. v. Cabinet for Health and Family Services*, 364 S.W.3d 106, 113 (Ky. 2012).

Kentucky Revised Statute ("KRS") 625.090 governs the termination of parental rights in Kentucky. That statute requires that a termination of parental rights must be based on three findings made by clear and convincing evidence: (1) the child is or has been adjudged abused or neglected as defined in KRS 600.020; (2) termination is in the child's best interest; and (3) at least one of the conditions of parental unfitness in KRS 625.090(2)(a)-(k) exists.

Though curiously not noted by the Cabinet, we must begin our analysis by stressing that Mother's brief, while it contains general citations to the record, is deficient because it does not indicate whether any of the arguments it contains were preserved, contrary to Kentucky Rules of Appellate Procedure ("RAP") 32(A)(4).  *See also J.P.T. v. Cabinet for Health and Family Services*, 689 S.W.3d 149, 152 (Ky. App. 2024).  We could strike Mother's brief.  *See* RAP 31(H)(1); *Gasaway v. Commonwealth*, 671 S.W.3d 298, 310 (Ky. 2023).  We could also treat each issue Mother raises as unpreserved and thus review only for palpable error.  *See Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021); Kentucky Rules of Civil Procedure ("CR") 61.02.

Given the paramount importance of ensuring that an order terminating parental rights fully complies with all legal requirements, we have elected to render a decision in this case and to not impose sanctions notwithstanding the deficiencies.

We may quickly reject Mother's argument that there was not clear and convincing evidence sufficient to support terminating her parental rights.  Mother seems to equate clear and convincing evidence with undisputed evidence.  But, as we have held, "the standard of clear and convincing evidence does not mean uncontradicted evidence.  It is the prerogative of the [trial] court to determine the credibility of witnesses and the weight of the evidence." *R.P., Jr. v. T.A.C.*, 469

S.W.3d 425, 427-28 (Ky. App. 2015) (citations omitted). When evidence is conflicting, a trial court must choose which to accept and which to reject. The trial court's weighing and assessing of evidence here does not mean its decisions were not supported by clear and convincing evidence.

Turning to the statutory factors, the trial court found that Mother had neglected the Children. That finding is supported by substantial evidence, such as the decision to reside in Grandmother's unsanitary home, Mother's struggles with basic parenting skills, Mother's focus on herself instead of the Children, and Mother's failure to complete her case plan despite having had over three years to do so. *See, e.g*., KRS 600.020(1)(a)4.; KRS 600.020(1)(a)9.

It is also beyond mathematical dispute that there is substantial evidence to support the trial court's finding that KRS 625.090(2)(j) had been met. That subsection is satisfied if there is clear and convincing evidence showing "the child has been in foster care under the responsibility of the cabinet for fifteen (15) cumulative months out of forty-eight (48) months preceding the filing of the petition to terminate parental rights[.]" The Children had been continuously in the Cabinet's care since October 2020, well over fifteen months prior to the April 2023 filing of the termination petitions. Because KRS 625.090(2)(j) was clearly satisfied, we decline to address additional factors in KRS 625.090(2). *T.P. v. Cabinet for Health and Family Services*, 697 S.W.3d 758, 762 (Ky. App. 2024).

Since those two statutory factors are not stringently challenged by Mother, the real crux of the matter is whether terminating Mother's rights was in each child's best interest. In making a best interest determination, KRS 625.090(3) requires a court to consider six factors, which the court here did. However, we shall discuss only the following three as Mother does not address the remainder:

> (c) If the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the petition made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents . . .;
>
> (d) The efforts and adjustments the parent has made in his circumstances, conduct, or conditions to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child;
>
> (e) The physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered . . . .

Mother argues the Cabinet did not make reasonable reunification efforts. We disagree. The Cabinet took pains to facilitate visitation between Mother and the Children, but Mother continued to focus primarily on herself during the visits. The Cabinet fashioned a case plan, but Mother did not complete it (albeit with some attenuating circumstances involving her guardianship). Henry testified that the Cabinet made all reasonable reunification efforts and there was nothing else the Cabinet could realistically do to assist Mother in regaining custody

-9-

of the Children. Mother even admitted in her testimony that the Cabinet had made reasonable efforts to reunify her with the Children.

Nonetheless, Mother contends the Cabinet "failed to explore supportive housing options or intensive in-home services . . . ." Appellant's Brief, p. 10. Mother cites to nothing to support her contention about housing and does not specify what "intensive in-home services" would reasonably help her reunite with the Children (especially while residing at Grandmother's house).

The next factor involves the efforts and adjustments made by Mother to make it in the Children's best interest to return to her home. KRS 625.090(3)(d). Mother stresses the parenting progress she made and accuses the trial court of abandoning its role as a neutral decisionmaker by ignoring testimony favorable to her. Mother's assertions are belied by the record. The trial court explicitly noted the testimony of both of Mother's sisters but found neither to be credible. The court also noted that Mother had completed parenting classes.

Next, KRS 625.090(3)(e) relatedly requires a court to consider "[t]he physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered[.]" Henry testified that the Children's needs had been met while the Children were in the Cabinet's custody, and the Children are improving. The Children had been in foster care for over three years by the time of the final hearing and, as the trial court noted, need

permanency and stability. *K.M.J. v. Cabinet for Health and Family Services*, 503 S.W.3d 193, 197 (Ky. App. 2016) (noting "the express legislative goal of leaving children in state foster care and away from a stable family setting for as brief [a] time as possible"). On the other hand, there is substantial evidence that returning the Children to Mother, especially while she lives at Grandmother's house, would be detrimental to the Children's welfare. The trial court did not err by declining Mother's request to be given more time to improve her parenting abilities.

In sum, the trial court adequately considered the statutory best interest factors and the court's conclusion that termination was in each of the Children's best interests is supported by substantial evidence.

Next, Mother argues that the trial court erred by not considering less restrictive alternatives. Her argument is problematic. First, we have not been shown where she raised this argument in the trial court. Instead, Mother's main argument in the trial court was that she should be given additional time to complete her case plan. Second, even if we assume for the sake of argument that the issue is preserved, Mother's brief contains improper citations. Specifically, Mother's brief asserts:

> Kentucky law requires the court to consider less
> restrictive alternatives before terminating parental rights.
> KRS 625.090(6). The Kentucky Supreme Court has held
> that "before a parent's rights can be terminated, there
> must be a showing that there is no less restrictive

-11-

alternative to termination." *Cabinet for Health & Family Servs. v. T.N.H.*, 302 S.W.3d 658, 663 (Ky. 2010).

But *T.N.H.* does not contain that quote, nor does it otherwise require a court to consider less restrictive alternatives before terminating parental rights. Similarly, KRS 625.090(6) does not require a court to consider less restrictive alternatives before terminating parental rights.

> KRS 625.090(6) provides in full as follows:
>
> Upon the conclusion of proof and argument of counsel, the Circuit Court shall enter findings of fact, conclusions of law, and a decision as to each parent-respondent within thirty (30) days either:
>
> (a) Terminating the right of the parent; or
>
> (b) Dismissing the petition and stating whether the child shall be returned to the parent or shall remain in the custody of the state.

The statute thus allows the court only three options after conducting a termination hearing: terminate parental rights; dismiss the petition and return the child(ren) to the parent; or dismiss the petition and order the child(ren) to remain in state custody. We reversed a trial court's decision to defer a termination decision to monitor the parent's progress. *See K.M.J.*, 503 S.W.3d at 197. There is no requirement in KRS 625.090 that the court consider less drastic alternatives. "Appellants must exercise care, diligence, and trustworthiness to ensure the accuracy of pinpoint citations provided to the appellate court in support of any

-12-

arguments . . . ." *Prescott v. Commonwealth*, 572 S.W.3d 913, 918-19 (Ky. App. 2019). *See also* Kentucky Supreme Court Rule ("SCR") 3.130(3.3)(a)(1).

In any event, there was sufficient evidence to support termination and the trial court was not required to keep the Children in the residential limbo of foster care to see if they could perhaps be returned to Mother in the future.

Similarly, we reject Mother's argument that the trial court erred by not exploring whether the Children could be placed with Mother's relatives. Henry gave unrebutted testimony that the Cabinet explored relative placement options, but none was appropriate.[3] Simply put, relative placement is "not a relevant issue at the involuntary termination hearing as it is not a factor listed in [KRS] 625.090." *A.R.D. v. Cabinet for Health and Family Services*, 606 S.W.3d 105, 107 (Ky. App. 2020). *See also P.S. v. Cabinet for Health and Family Services*, 596 S.W.3d 110, 119 (Ky. App. 2020).[4]

---

[3] *See also P.W. v. Cabinet for Health and Fam. Servs.*, 417 S.W.3d 758, 761 (Ky. App. 2013).

[4] At one time, a court was required to consider less drastic measures before permitting an adoption without a parent's consent. *D.S. v. F.A.H.*, 684 S.W.2d 320, 323 (Ky. App. 1985). But this is not an adoption case. Arguably, we fleetingly held that less drastic measures must be considered prior to termination of parental rights. *L.B.A. v. H.A.*, 731 S.W.2d 834, 836 (Ky. App. 1987) (holding that "less drastic measures *must* be considered by the court prior to granting termination and involuntary adoption") (emphasis original). However, though our broad language facially encompassed terminations and adoptions, *L.B.A.* involved an adoption (without parental consent) so its statements about termination were dicta. Regardless, as we have explained, "*D.S.* was decided pursuant to the old statute for termination of parental rights, KRS 199.603, which was repealed in 1987. The current statute and its corresponding case law contain no requirement that a court consider means less drastic than adoption prior to a judgment of adoption." *B.L. v. J.S.*, 434 S.W.3d 61, 67 (Ky. App. 2014). *L.B.A.* was also decided under KRS 199.603, which it repeatedly cites and quotes. 731 S.W.2d at 835. In sum, precedent

As a final matter, we reject Mother's argument that the trial court did not make particularized findings as to each child's special developmental needs. Mother has not shown where this issue was preserved. Regardless, even if we assume for the sake of argument that it is preserved, Mother is not entitled to relief. The court summarized testimony given by Daughter's therapist regarding Daughter's conditions and the improvements Daughter had made in therapy. However, the court did not discuss meaningfully either son's individualized needs. But Mother has not shown that the lack of individualized findings for either son materially impacted her substantial rights. The trial court addressed the relevant statutory factors, and no added individualized findings would reasonably have impacted the outcome of any of the termination petitions. Consequently, at most, the lack of individualized findings is a harmless error under CR 61.01.

In conclusion, determining whether to sever permanently a parent's rights to his or her child is a difficult decision. The difficulty is magnified when a parent, such as occurred here, has made improvements but has not made sufficient progress to allow reunification. Although the parent-child relationship is valuable, the needs of the Children cannot be placed on hold indefinitely to see if a parent will eventually make enough strides such that reunification in the Children's best

requiring a court to consider less restrictive alternatives prior to terminating parental rights is distinguishable as it is based upon a repealed statute.

interests. We recognize that Mother has unique challenges stemming from her guardianship. However, the trial court assessed the entire situation at hand and made the requisite findings, which are supported by substantial evidence.

For the foregoing reasons, the Graves Circuit Court is affirmed in all three appeals.

ALL CONCUR.

BRIEF FOR APPELLANT:

Eston V. Whiteside
Paducah, Kentucky

BRIEF FOR APPELLEE CABINET
FOR HEALTH AND FAMILY
SERVICES:

Kevin Martz
Covington, Kentucky