RENDERED: JULY 25, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1309-ME

M.S.N.                                                              APPELLANT


APPEAL FROM MONTGOMERY CIRCUIT COURT
v.            HONORABLE DAVID A. BARBER, JUDGE
ACTION NO. 24-AD-00001


CABINET FOR HEALTH AND
FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY;
D.D.N.; AND K.D.N., A MINOR
CHILD                                                              APPELLEES

AND


NO. 2024-CA-1314-ME

M.S.N.                                                              APPELLANT


APPEAL FROM MONTGOMERY CIRCUIT COURT
v.            HONORABLE DAVID A. BARBER, JUDGE
ACTION NO. 24-AD-00002


CABINET FOR HEALTH AND
FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY;

D.D.N.; AND K.A.N., A MINOR
CHILD                                                                    APPELLEES

AND

NO. 2024-CA-1316-ME

M.S.N.                                                                   APPELLANT

APPEAL FROM MONTGOMERY CIRCUIT COURT
v.            HONORABLE DAVID A. BARBER, JUDGE
              ACTION NO. 24-AD-00003

CABINET FOR HEALTH AND
FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY;
D.D.N.; AND K.D.N., A MINOR
CHILD                                                                    APPELLEES

AND

NO. 2024-CA-1317-ME

M.S.N.                                                                   APPELLANT

APPEAL FROM MONTGOMERY CIRCUIT COURT
v.            HONORABLE DAVID A. BARBER, JUDGE
              ACTION NO. 24-AD-00004

CABINET FOR HEALTH AND
FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY;

D.D.N.; AND K.W.N., A MINOR
CHILD                                                                                     APPELLEES

AND

NO. 2024-CA-1318-ME

M.S.N.                                                                                      APPELLANT

APPEAL FROM MONTGOMERY CIRCUIT COURT
v.                    HONORABLE DAVID A. BARBER, JUDGE
ACTION NO. 24-AD-00005

CABINET FOR HEALTH AND
FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY;
C.G.; AND K.E.G., A MINOR CHILD                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, L. JONES, AND McNEILL, JUDGES.

McNEILL, JUDGE:  Appellant, M.S.N. ("Mother"), appeals five sets of Findings

of Fact and Conclusions of Law and Judgments terminating her parental rights to

K.D.N., K.D.N., K.W.N., K.A.N., and K.E.G. ("the Children") entered by the

Montgomery Circuit Court on September 26, 2024.  Those Judgments also

terminated the parental rights of D.D.N., father to K.D.N., K.D.N., K.W.N., and

-3-

K.A.N., and C.G., father to K.E.G.; neither father has been involved in the matters before this Court.[1]  After a careful consideration of the briefs, relevant law, and the record on appeal, we affirm.

## BACKGROUND

This family first became involved with the Montgomery District Court in December 2018 when Appellee, the Cabinet for Health and Family Services ("the Cabinet") filed dependency, neglect, or abuse ("DNA") petitions for the eldest four Children based on substance abuse concerns concerning Mother and her boyfriend.  Also in place at the time was an Emergency Protective Order ("EPO") on behalf of Mother and the Children against D.D.N., who was receiving weekend visitations through that order.  (Case No. 24-AD-00001, Record, "R." at 172.)  The Cabinet assumed custody of the Children and placed them with the paternal aunt and uncle.  During the pendency of the DNA case, Mother was arrested and charged with possession of multiple illicit substances including methamphetamine and heroin.[2]  (R. at 407-51.)  Over the following months,

---

[1] D.D.N. consented to a voluntary termination of parental rights for his four children in the case below.  C.G. has not participated in the appeal concerning his child, K.E.G., or filed a separate notice of appeal or cross-appeal.

[2] We have confirmed this information from the case files with the Montgomery Circuit Court Clerk. To maintain confidentiality of the parties, we will not list the case numbers of such publicly available files.  Information about the existence of charges may be referenced by an appellate court to provide perspective for the trial court proceedings. *See, e.g.*, *Mulazim v. Commonwealth*, 600 S.W.3d 183, 203 n.6 (Ky. 2020).

Mother and D.D.N. attempted to reconcile and both substantially completed the case plans provided by the Cabinet. In January 2020, Mother and the Children moved to a domestic violence shelter in Fayette County and the district court returned custody of the Children to Mother; however, D.D.N. did not regain custody at that time due to increased noncooperation with the Cabinet and domestic violence concerns. (R. at 213.)

Approximately six months later, the Cabinet filed a second round of DNA petitions in Fayette County after Mother tested positive for methamphetamine and fentanyl and concerns with Mother having relations with individuals of ill repute and allowing them around the Children. (R. at 220-23.) The Children were removed and placed with paternal grandparents. During this time, Mother was involved in a relationship with C.G. and, again, worked her case plan to completion. The Fayette Circuit Court returned custody of the Children to her in July 2021. (R. at 343-52.)

C.G. and Mother moved back to Montgomery County and the youngest Child, K.E.G., was born in June 2022. At some point in the latter half of 2022, the four eldest Children were sent to stay with the paternal grandparents and the youngest child was sent to stay with C.G.'s family friend. In September 2022, Mother had two brain surgeries and was in and out of hospitals for the next few months, during which time she began having contact with D.D.N. again. (Video

Record, "V.R." August 29, 2024, Hearing – 11:45:00.)  In December 2022, the Cabinet filed a third round of DNA petitions because of allegations of abandonment, inappropriate discipline, and continuing substance abuse on the part of C.G. and Mother.  Mother, D.D.N., and C.G. submitted to drug screens shortly thereafter and all of them tested positive for various illicit substances; specifically, Mother tested positive for methamphetamine.  (R. at 80.)  The Cabinet assumed custody of the Children; the four eldest Children remained placed with paternal grandparents,[3] and the youngest Child remained placed with C.G.'s family friend.

Over the next several months, Mother and C.G. enrolled in multiple sober living facilities and began multiple substance abuse treatments, but never completed them.  The parents did not consistently exercise their visitation with the Children, drug test, or maintain contact with the Cabinet during this time, despite the Cabinet making several efforts to engage with them.  (V.R. August 19, 2024, Hearing – 1:28:40.)

Mother was arrested in July 2023 and charged with a felony in trafficking in heroin,[4] at which time she tested positive for methamphetamine,

---

[3] The four eldest Children were later removed from paternal grandparents and placed with the paternal aunt and uncle after it was discovered that paternal grandparents were allowing unsupervised contact between D.D.N. and the Children.  (R. at 76.)

[4] We have confirmed this information from the case files with the Montgomery Circuit Court Clerk. To maintain confidentiality of the parties, we will not list the case numbers of such publicly available files. The felony charge was later amended down to a misdemeanor conviction in facilitation of a controlled substance.  Mother testified that she does not remember anything

fentanyl, and ecstasy. (R. at 388.) Shortly afterwards, the district court suspended all visitation between the parents and the Children. The Cabinet and Mother were able to meet once in October 2023; Mother tested positive for methamphetamine, THC, and unprescribed Suboxone at that time. (R. at 386-87.) The district court soon thereafter changed the Children's goals to adoption, and the Cabinet filed termination of parental rights ("TPR") petitions in January 2024. Over the following six months, the district court continued to conduct reviews in the DNA case, the Cabinet continued to have infrequent contact with the parents, and Mother and C.G. continued to be in and out of a handful of sober living facilities and residences, during which time they were not able to fully accomplish anything on their case plans besides parenting classes. Eventually in July 2024, the district court granted the Cabinet's request for reasonable efforts to be waived regarding C.G. and Mother.[5] (R. at 355.)

The circuit court subsequently conducted a termination of parental rights hearing in August 2024, during which it heard testimony from the ongoing case worker ("the Cabinet worker"), the paternal uncle, who is currently the foster

___

about this incident, but states it was amended down because she did not partake in a transaction and was only present during one. (V.R. August 29, 2024, Hearing – 11:31:00.)

[5] Reasonable efforts are defined as "the exercise of ordinary diligence and care by the department to utilize all preventive and reunification services available to the community in accordance with the state plan for Public Law 96-272 which are necessary to enable the child to safely live at home[.]" Kentucky Revised Statutes ("KRS") 620.020(13).

parent to the eldest four Children, C.G., Mother, and maternal grandmother. At the conclusion of the hearing, the circuit court found the Cabinet had met its burden and subsequently issued written Findings of Fact and Conclusions of Law and Judgments terminating parental rights. This appeal followed.

## STANDARD OF REVIEW

A judgment terminating a parent's rights will only be reversed if it is clearly erroneous, or, in other words, if there is no substantial, clear, and convincing evidence to support the decision. *Cabinet for Health & Fam. Servs. v. T.N.H.*, 302 S.W.3d 658, 663 (Ky. 2010).

## ANALYSIS

There are three necessary determinations a circuit court must make before a parent's rights may be involuntarily terminated: (1) the child is found to be "[a]bused or neglected[,]" as defined by KRS 600.020(1); (2) the termination must be in the child's best interest; and, (3) at least one ground of parental unfitness as set out in KRS 625.090(2) exists. KRS 625.090; *see also Cabinet for Health and Fam. Servs. v. K.H.*, 423 S.W.3d 204, 209 (Ky. 2014).

Mother does not dispute the finding that the Children were abused or neglected. Instead, Mother argues the circuit court's findings that the termination of her parental rights was in the Children's best interests and that Mother had no reasonable expectation of improvement, as pertaining to the factors of KRS

-8-

625.090(2), were clearly erroneous insofar as the Cabinet did not appropriately utilize reasonable efforts to reunite the Children with Mother given the complications she suffered as a result of her brain surgeries in September 2022.

> Pursuant to KRS 625.090(3)(c)1.:
>
> In determining the best interest of the child and the existence of a ground for termination, the Circuit Court shall consider the following factors:
>
> [] If the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the petition [m]ade reasonable efforts as defined in KRS 620.020 to reunite the child with the parents unless one or more of the circumstances enumerated in KRS 610.127 for not requiring reasonable efforts have been substantiated in a written finding by the District Court[.]

As mentioned above, the Montgomery District Court waived reasonable efforts regarding C.G. and Mother in the DNA case. The Cabinet made the request after parents failed to adequately maintain contact with the Cabinet, failed to comply with case plans, and continued to exhibit substance abuse issues. (V.R. August 19, 2024, Hearing – 1:28:40.) This falls squarely under the exception afforded by KRS 610.127(5).

Mother takes issue with the waiver. She acknowledges that she did not complete many of the treatment plans she began prior to the termination hearing but contributes that to the issues she suffered as a result of her brain

-9-

surgeries, including significant memory problems. She argues that the Cabinet should have made more targeted efforts to assist with her brain-related issues.

However, Mother's own testimony at trial stands contrary to this argument. Specifically, she testified that her memory began improving in late 2023; that she believed she adequately completed all of the tasks on her case plan through her treatments at the Suboxone clinic she attended; and that she was in a position to take the Children back into her custody on the date of the hearing. (V.R. August 29, 2024, Hearing – 11:15:30.) This suggests Mother herself did not believe she needed any specialized services.

Regardless, the Cabinet also provided significant evidence of why the termination was in the Children's best interests, despite the issues surrounding Mother's brain surgeries.

Firstly, the Cabinet worker testified at length about her several attempts to contact Mother, including through text, phone calls, and home visits, which were unsuccessful. Markedly, several of these attempts occurred in 2024, after the time which Mother claimed her memory had improved. Mother and C.G. also admitted to having moved to Ohio and not informing the Cabinet of doing so. In order for the Cabinet to have provided specialized services regarding Mother's brain surgery-related issues, Mother, at the bare minimum, would have needed to maintain contact with the Cabinet and adequately share the details of her surgeries,

which did not occur.  Notably, Mother does not provide any examples of what sort of specialized services she should have received.  And as the Cabinet points out, Mother did not contest the case plan provided as a violation of her rights under the Americans with Disabilities Act.  *See Cabinet for Health and Family Servs. v. K.S.*, 585 S.W.3d 202 (Ky. 2019) (citations omitted).

Secondly, despite Mother's concerning testimony that she no longer has substance abuse issues,[6] the evidence clearly shows that she had problems long before her brain surgeries occurred, as seen by the previous DNA petitions and Mother's various drug-related criminal charges and multiple positive drug screens over the years.  Those problems continued as evinced by her continuing use of drugs and failure to complete any substance abuse treatment programs, either by her own volition or being removed from them for noncompliance.

Finally, the Children are doing well with their foster placements, both of which are pre-adoptive homes.  The eldest four Children have bonded with paternal aunt and uncle, the same family which provided care after the first DNA petitions were filed in 2018.  Those Children have also expressed a desire to not

---

[6] Particularly, Mother testified that she had only actively used drugs consistently for six months in the past, around the time the first DNA petitions were filed in 2018; that in her opinion, a few relapses since then does not constitute proactive drug use; that she does not need Suboxone anymore after receiving one extended-release injection; and that she felt she never needed to go into an in-house rehabilitative program.  (V.R. August 29, 2024, Hearing – 11:36:50.)

have any contact with parents.  The youngest Child has likewise bonded with her foster family, the only one she has known for the majority of her life.

Given the evidence proffered by the Cabinet and by Mother, we see no error in the circuit court's determination that Cabinet did not fail to exercise any required reasonable efforts.  *See J.R.E. v. Cabinet for Health & Fam. Servs.*, 667 S.W.3d 589, 593 (Ky. App. 2023).  Thus, we hold there to be no error in the circuit court's finding that the termination of Mother's parental rights would be in the Children's best interests.

Similarly, based on the same evidence identified above, we hold that the circuit court did not err in finding there was no reasonable expectation of improvement on the part of Mother.  *Cf. M.E.C. v. Commonwealth, Cabinet for Health & Fam. Servs.*, 254 S.W.3d 846 (Ky. App. 2008).  In *M.E.C.*, the mother was hospitalized for a time due to brain-related trauma during the course of her DNA case; however, after being released from the hospital, she continued to meet with the Cabinet, work on her case plan goals, and visit with her children (outside of times in which she was briefly incarcerated).  *Id.* at 849.  Additionally, at the time of the final hearing, the mother was "in a substance abuse treatment center, had a full-time job, acquired parenting classes for herself, and had resolved most of her legal issues."  *Id.* at 854.  And importantly, the Cabinet, in *M.E.C.*, "supplied no evidence that, other than incarceration and hospitalization, that M.E.C. was

-12-

uncooperative with her plan." *Id.* at 852. In this case, there is ample evidence, besides Mother's incarceration and hospitalization, to show how she was uncooperative with her case plan. Thus, we see no errors in the circuit court's findings regarding the parental unfitness grounds of KRS 625.090(2).

## CONCLUSION

It is apparent from the record on appeal that there was substantially clear and convincing evidence to support the circuit court's findings and its ultimate decision to terminate Mother's parental rights. As those findings were supported by sufficient evidence, we may not disturb them. *R.P., Jr. v. T.A.C.*, 469 S.W.3d 425, 428 (Ky. App. 2015). Accordingly, we affirm the Montgomery Circuit Court's September 26, 2024, Findings of Fact and Conclusions of Law and Judgments terminating Mother's parental rights.

ALL CONCUR.

BRIEF FOR APPELLANT:

Charles Landon
Lexington, Kentucky

BRIEF FOR APPELLEE CABINET
FOR HEALTH AND FAMILY
SERVICES:

Leslie M. Laupp
Covington, Kentucky

-13-