RENDERED: MARCH 20, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0797-ME

L.D.C.                                                APPELLANT

v.                  APPEAL FROM CALLOWAY CIRCUIT COURT
HONORABLE STEPHANIE J. PERLOW, JUDGE
ACTION NO. 24-AD-00031

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES AND S.X.K.C., A
MINOR CHILD                                  APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, MᶜNEILL, AND MOYNAHAN, JUDGES.

MOYNAHAN, JUDGE: L.D.C. ("Mother") appeals from a judgment terminating

her parental rights to S.X.K.C. ("Child"). Only Mother's parental rights are at

issue because no biological or legal father has been identified. After a thorough

review of the record and the proceedings below, we AFFIRM the decision of the Calloway Family Court.

## PROCEDURAL HISTORY

Child was born January 19, 2024. Both Mother and Child tested positive for illegal substances at the time of Child's birth. Upon receipt of a report reflecting these findings, the Cabinet for Health and Family Services ("the Cabinet"), by way of social worker Andrea Fox, visited Mother and Child in the hospital to further investigate the matter. Mother told Fox that she suffers from several diagnosed mental health issues, namely, Borderline Personality Disorder, Anxiety, and Depression. Mother admitted to "daily" methamphetamine use during her pregnancy.[1] She further admitted to using cocaine and drinking alcohol on several occasions during her pregnancy, claiming that Child did not "feel real" until he was born. Child exhibited withdrawal symptoms shortly after birth.[2]

Mother has a substantial criminal history related to her substance abuse; at the time of Child's birth, she was on probation for possession of methamphetamines and without a permanent residence. Moreover, during the

---

[1] Mother testified that she was using methamphetamines daily until July when she attended a 30-day rehab program. Following her participation in the program she reduced her use of methamphetamines to two to three times per week for the remainder of the pregnancy.

[2] To the extent that Appellant contends that a discrepancy exists between the Cabinet at times describing the withdrawal symptoms as "mild" and at other times "severe," the trial court found the symptoms to be severe, citing evidence that the child suffered from loose stools, difficulty feeding, and an inability to be consoled.

course of the investigation, the Cabinet discovered Mother has another child who was removed from her custody and placed with Mother's half-sister due to the former's substance abuse problem.[3]

As a result of the investigation the Cabinet filed a petition for emergency custody on January 22, 2024—three days after Child was born. The petition was granted, and Child was subsequently removed from Mother's custody. In an adjudication hearing on February 19, 2024, Mother stipulated to neglect due to her substance abuse issues affecting her ability to parent at the time the petition was filed. Consequently, the Court determined Child was abused or neglected pursuant to Kentucky Revised Statute ("KRS") 600.020 and awarded the Cabinet temporary custody.[4] Fox testified at the termination hearing that she met with Mother on behalf of the Cabinet at some point in February of 2024 to discuss her case plan for reunification ("Case Plan"); Fox further testified that Mother signed this plan. The Case Plan included the following goals for reunification: (1)

---

[3] Twelve years prior to the birth of Child, when Mother's older child ("Daughter") was two years old, Daughter was found wandering around outside without supervision while Mother was intoxicated. Mother was charged with wanton endangerment because of this event. Daughter, now 14, has been with Mother's half-sister for the last 12 years. Half-sister was contacted to take custody of Child, however, she declined.

[4] It should be noted that no father for Child has been identified despite testing of Mother's proposed candidates and a search of the putative father registry. Mother maintains that she does not know of anyone else who might be the father. Moreover, while Mother did supply the names of several relatives whom Child could be placed with, these individuals were either unwilling or unacceptable for placement due to substance abuse and/or criminal history. Consequently, there was no other option than to commit Child to Cabinet's custody, who placed him in a foster home through the duration of these proceedings.

establish a permanent residence, (2) find stable employment, (3) do not allow drugs or alcohol inside the home, (4) resolve all outstanding legal issues, (5) complete parenting classes once sobriety has been maintained for three months, (6) complete a mental health assessment and follow all recommendations to address mental health issues, (7) complete a substance abuse assessment and follow all recommendations to address substance abuse issues, (8) complete domestic violence classes,[5] (9) discontinue using drugs and alcohol, (10) attend regular Alcoholics' Anonymous ("AA")/Narcotics' Anonymous support groups at least twice weekly and provide proof of attendance to Cabinet monthly, and (11) submit to random drug screenings.

Mother began to work on her Case Plan shortly after its establishment. She completed a substance abuse assessment at Emerald Therapy Center ("Emerald") on or about March 12, 2024. However, within two weeks of this assessment, Mother was arrested for driving under the influence ("DUI"). This charge violated the terms of her probation and Mother was returned to incarceration where she remained until February of 2025. Shortly thereafter Child was committed to the Cabinet's custody. Starting in August of 2024, the Cabinet

---

[5] Mother and Mother's wife, Jessica, have a history of domestic violence, necessitating this provision in the Case Plan.

brought Child to the jail for regular visits, which continued for the duration of Mother's incarceration.

On or about September 16, 2024, there was a permanency hearing wherein the Cabinet sought a goal change from reunification to adoption as well as a Waiver of Reasonable Efforts[6] ("Waiver"). When asked, Fox said that the Cabinet's reasoning for seeking the goal change had to do with Mother being incarcerated for a DUI. More particularly, the evidenced lack of progress towards addressing her substance abuse issues, as well as the lack of progress on the other goals of her Case Plan. This reasoning is reflected in the findings of fact in the order granting the goal change. Furthermore, at that time the Cabinet did not know how long Mother would be incarcerated; Fox stated that when confronted with periods of incarceration of about a year, the Cabinet starts to consider other options for the sake of permanency for the child. According to Fox, after the Waiver is obtained, the Cabinet ceases being proactive about the support it provides but will assist parents that reach out to them looking for resources.

While incarcerated, Mother took anti-depressants and regularly attended AA meetings. Upon her release in February of 2025, Mother has continued working her Case Plan. She obtained full-time employment, moved in with her wife, and enrolled in a substance abuse program through Serenity. She is

---

[6] KRS 610.127.

still attending meetings and claims to be free of all illegal drugs but has been subject to only one known random urinalysis screening. Once Mother's supervised release was scheduled to terminate (in five months, at the time of the hearing), she will have resolved all outstanding legal issues. Additionally, Mother claimed to be making child support payments, though the Cabinet was unable to substantiate this at the termination hearing.

As to the other remaining goals of her Case Plan, there has been little or no progress. Since her release, Mother has stopped taking anti-depressants and has not sought further medical assistance with her mental health issues. She has not attended any parenting or domestic violence classes.[7] Though she does have a permanent residence now, Mother is aware her wife, Jessica, whom she lives with, is unfit for placement due to concerns with domestic violence and substance abuse. Mother is unaware of her own sobriety date. Moreover, she has consumed alcohol on at least one occasion *while* receiving treatment for substance abuse through Serenity. At the termination hearing Mother testified that she was drinking with a friend, whose name she did not recall, sometime in April of 2025. The termination hearing took place on or about April 29, 2025. At this hearing Mother further testified that alcohol was her "drug of choice" but does not view having a few

---

[7] At the termination hearing Mother testified that she thought the domestic violence classes were taken off her Case Plan. There is no evidence on the record to suggest that this goal was removed at any point.

beers as problematic, though she acknowledges this conduct would likely result in her expulsion from the program at Serenity.

## STANDARD OF REVIEW

In reviewing a decision to terminate parental rights, we apply the clearly erroneous standard which focuses on whether the family court's order of termination was based on clear and convincing evidence. Kentucky Rules of Civil Procedure ("CR") 52.01; *Cabinet for Health and Family Services v. K.H.*, 423 S.W.3d 204, 209 (Ky. 2014); *see also Cabinet for Health and Family Services v. T.N.H.*, 302 S.W.3d 658, 663 (Ky. 2010). An appellate court must give a great deal of deference and should not interfere with those findings unless the record is devoid of substantial evidence to support them. *Id.* (citation omitted). Thus, a judgement is not clearly erroneous if it is supported by substantial evidence, meaning "there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people." *M.P.S. v. Cabinet for Human Res.*, 979 S.W.2d 114, 117 (Ky. App. 1998) (citing *Rowland v. Holt*, 70 S.W.2d 5, 9 (Ky. 1934)); *see also Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citing *Kentucky State Racing Commission v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972)).

## ANALYSIS

To guarantee that the demands of due process are satisfied, KRS 625.090 requires satisfaction of a tripartite test by clear and convincing evidence. *K.H.*, 423 S.W.3d at 209. A trial court must find that: (1) the child is an "abused or neglected child" as the term is defined in KRS 600.020(1); (2) termination of parental rights is in the child's best interests; and (3) at least one ground for termination listed in KRS 625.090(2)(a)-(k) exists. *Id*.

Mother raises several arguments in support of her general contention that the Cabinet did not meet its statutory burden. First, she argues that the Cabinet failed to prove the child was abused or neglected under KRS 600.020(1). As to the second prong, she contends that termination was not in the child's best interests, asserting that the Cabinet improperly relied on her past incarceration to justify changing the permanency goal from reunification to adoption. Addressing the third prong, she maintains that the Cabinet failed to prove there was no reasonable expectation of improvement, emphasizing her post-release efforts to obtain housing and employment, attend substance-abuse treatment and AA, and participate in visitation. Succinctly, she argues that the trial court's decision was not supported by clear and convincing evidence because Child was never in her custody, she made substantial progress on her Case Plan, and she was not afforded sufficient time to complete it.

We address each prong of the tripartite test in turn, responding to Mother's contentions as they become relevant to the analysis.

## 1. There is Substantial Evidence That Child is an "Abused or Neglected Child."

In the instant case, Child was formally adjudicated as a neglected or abused child by order of the Calloway Family Court on February 19, 2024, due to Mother stipulating to neglect as a result of her substance abuse. At the termination hearing in April 2025, the Calloway Family Court reached the same conclusion and made its own particularized findings of fact that Child was abused or neglected pursuant to KRS 600.020(1) in that proceeding.[8] There is substantial evidence on the record to support its finding as detailed below.

Despite the regular visits with Child, the relationship between the two is acrimonious. Both parties agree that Child has a strong adverse reaction to the mere sight of Mother. He begins to cry inconsolably. The Cabinet repeatedly tried to instruct Mother on techniques to soothe Child, which Mother failed to implement. Child will hardly allow Mother to touch him. In an attempt to see if Child merely has an adverse reaction to strangers, in the most recent visit the

---

[8] In making this finding, the court gave the following reasons: (1) Mother continuously or repeatedly fails or refuses to provide essential parental care and protection for the child, considering the age of the child, KRS 600.020(1)(a)4.; and (2) Mother has not provided the child with adequate care, supervision, food, clothing, shelter, and education or medical care necessary for the child's well-being, KRS 600.020(1)(a)8.

Cabinet switched the social worker supervising the visit to one whom Child had not previously met—Fox. About 15 minutes before the visit, Fox interacted with Child. She testified at the termination hearing that although he cried initially, he calmed quickly and was content until the moment he saw Mother in the hallway. Fox started off in the room with the pair but left after Child was more at ease and continued to observe. Once alone with Mother, Child was inconsolable. He cried so intensely that Fox asked permission to end the visit early, describing the scene as "hard to watch." Moreover, Mother relies heavily on Child's foster mother for diapers and other essentials during these visits.

Even setting aside the strained emotional state Child exhibits toward Mother, the latter is simply unequipped to provide adequate care. She has been unable to maintain alcohol sobriety, she has yet to take parenting or domestic violence classes, and she has taken no steps towards meaningfully addressing her very serious mental health concerns. Considering the tender age and special medical needs[9] of Child, while Mother's progress is admirable, she has not provided essential parental care for Child's wellbeing.

---

[9] Child suffers complications from drug exposure *in utero*; he wears leg braces and must regularly attend physical and speech therapy. Although he is currently meeting some developmental milestones, the neurologist providing care for him believes him to be at risk for cerebral palsy—the symptoms of which would not fully manifest until Child is a little older.

**2. Based on Substantial Evidence, The Trial Court Did Not Abuse Its Discretion in Finding That Termination of Parental Rights is in the Child's Best Interest.**

"As to what constitutes the best interest of the child, any factual findings are reviewed under the clearly erroneous standard; any decisions based upon said facts are reviewed under an abuse of discretion standard." *Young v. Holmes*, 295 S.W.3d 144, 146 (Ky. App. 2009) (citations omitted). When making a best interest determination, the court must consider the following factors: (a) mental illness and/or intellectual disability, (b) acts of abuse or neglect towards any child in the family, (c) whether the Cabinet made reasonable efforts to reunite child in Cabinet custody with the parent before filing the petition to terminate their rights, (d) any efforts and adjustment the parent has made in her circumstances, conduct, or conditions to make reunification in the child's best interest, (e) the child's overall welfare and outlook for improvement if termination is ordered, and (f) payment or failure to pay a reasonable portion of the child's care and maintenance if financially able to do so. KRS 625.090(3).

Mother argues that the Calloway Family Court improperly relied on her incarceration in making its finding, and she relies on *M.E.C. v. Commonwealth, Cabinet for Health and Family Services*, 254 S.W.3d 846 (Ky. App. 2008). But her argument is unavailing because the factual circumstances here differ starkly

from those in *M.E.C.* There, mother committed no additional crimes after removal, demonstrated nurturing behavior during visits, and proactively engaged in services designed to facilitate reunification. Here, the Calloway Family Court made extremely detailed findings of fact and law that support the majority of the factors considered under KRS 625.090(3). Substantial evidence supports that these factors continue to exist after her release from incarceration.

Mother has substantial mental health issues which she has not addressed. Mother previously stipulated to abuse of Child and has failed to make substantial improvements in aforementioned areas of concern. The Cabinet worked with Mother to achieve her Case Plan until she was incarcerated for her decision to drive drunk while on probation. Even after obtaining a Waiver, the Cabinet continued to work with Mother by bringing Child to the jail for repeated visits. While Mother has made some changes to her circumstances, these efforts fall short of a healthy and safe environment for Child as, among other things, she has failed to adequately address the primary concerns of the Cabinet—her substance abuse and mental health. Child is currently in the only home he has ever known and, by Mother's own admission, is doing well there. He is meeting milestones and has access to the healthcare he needs. The Calloway Family Court's finding that Mother is simply not in a position to care for Child and his specialized needs is supported by substantial evidence.

**3. There is Substantial Evidence That at Least One Ground for Termination as Enumerated in KRS 625.090(2) Exists.**

The court must find that at least one of the grounds for termination enumerated in KRS 625.090(2)(a)-(k) exists to support the termination of parental rights. Mother met two statutory grounds: KRS 625.090(2)(e) and (g). Substantial evidence on the record, including Mother's testimony, supports each ground. The Calloway Family Court made detailed findings of fact and conclusions based on this evidence.

Mother contends that there is not substantial evidence to support termination because both grounds identified have an embedded requirement that there is "no reasonable expectation of improvement." She alleges that in the time since she has been released from incarceration, she has made progress on several aspects of her Case Plan. While this is true, it leaves out important context. Specifically, it was Mother's own actions, taken *after* the initiation of proceedings, that set her back on her Case Plan in the first place. *Cf. M.E.C.*, 254 S.W.3d 846 (record did not support a finding of no reasonable expectation of improvement because it was predicated on conduct prior to termination proceeding commencing).

Even if we were to disregard the year she spent in incarceration, Mother is currently failing to make further progress on her Case Plan. She has not

been able to maintain sobriety for the few short months since her release, as she consumed alcohol with a person whose name she does not even remember when her termination hearing was just weeks away. This fact clearly establishes substantial doubt about Mother's continued sobriety.[10] If anything, her conduct since release has proven the concerns of the Cabinet correct.[11] Moreover, she has not seen a mental health professional to address her very serious mental illnesses which require lifelong treatment. These are just the most serious concerns in her Case Plan. Considering Child's tender age and the numerous barriers to reunification discussed above, necessary improvements by Mother cannot be reasonably expected in the near or intermediate future.

There is no evidence on the record that Mother provided essential parental care under KRS 625.090(2)(e) or the supplies and services contemplated by KRS 625.090(2)(g). As discussed, Child's visits with Mother go poorly, with the latter either unable or unwilling to implement basic soothing techniques suggested by the Cabinet. Mother rarely brings essential care items to these visits.

---

[10] Although it is not clear from the record whether there was an exact sobriety date ever put into writing, but at the termination hearing Fox stated that considering Mother's long history with substance abuse, the Cabinet would need to see sustained sobriety for "well over a year."

[11] In fact, in some ways Mother has moved backwards in her progress since release. While incarcerated she regularly attended AA and took antidepressants. Although she is attending AA—in name only since she is still drinking—she has ceased taking helpful psychiatric medication since her release. The fact that Mother ceased entirely and has not sought alternative treatment speaks to the lack of care to seriously and meaningfully work her Case Plan such that it is safe for Child to be returned to her.

There is little to suggest that Mother will be able to markedly improve her circumstances any time soon. We perceive no error in the findings of the Calloway Family Court.

### 4. Mother Failed to Establish That Further Services Would Enable Reunification.

In addition to the tripartite test, the statute provides parents the opportunity to present evidence regarding the Cabinet's reunification efforts and whether additional services would be likely to effectuate a child's return to the parent. KRS 625.090(4). Mother asserts that the Cabinet did not provide any efforts or services to effectuate reunification. Evidence on the record and testimony from the termination hearing demonstrate the efforts the Cabinet went to for Mother. *See J.R.E. v. Cabinet for Health and Family Services*, 667 S.W.3d 589, 593 (Ky. App. 2023) (finding Cabinet went to sufficient efforts to reunify). The Cabinet repeatedly informed Mother of the progress she needed to make and began to work with her on her Case Plan before she got the DUI. After her incarceration, the Cabinet continued to bring Child in to bond with Mother despite having already obtained a Waiver.[12] During these visits the Cabinet tried to guide

---

[12] It should be noted that the Cabinet's decision to facilitate the jail visitations was unusually accommodating. The Cabinet typically declines to transport infant children into correctional facilities due to health and safety concerns, regardless of whether they have obtained a Waiver. *J.R.E. v. Cabinet for Health and Family Services*, 667 S.W.3d 589, 592 (Ky. App. 2023); *M.E.C. v. Commonwealth, Cabinet for Health and Family Services*, 254 S.W.3d 846, 853 (Ky. App. 2008); *B.J.W. v. Cabinet for Health and Family Services*, No. 2022-CA-1116-ME, 2023 WL

the interaction with soothing techniques that Mother failed to implement. The Cabinet further demonstrated its willingness to accommodate Mother by permitting her to switch substance abuse treatment providers. *Cf. K.D.H. v. Cabinet for Health & Family Servs.*, 630 S.W.3d 729, 734–35 (Ky. App. 2021). Mother has, by her own decision, failed to follow up on Cabinet recommendations. At every junction Mother has chosen not to reliably work towards all aspects of her Case Plan. Successful reunification requires a level of proactivity and consistency on Case Plan progress that is simply lacking here. *Cf. F.V. v. Cabinet for Health and Family Services*, 567 S.W.3d 597, 607–08 (Ky. App. 2018).

## CONCLUSION

Given the circumstances described above, we cannot say the Calloway Family Court erred in terminating Mother's parental rights. Substantial evidence in the record supports its findings in satisfaction of the tripartite test. We AFFIRM.

ALL CONCUR.

---

2817495 at \*2 (Ky. App. Apr. 7, 2023). That the Cabinet nevertheless undertook these visits undermines Mother's claim that reunifications efforts were insufficient.

BRIEF FOR APPELLANT:        BRIEF FOR APPELLEE:

Rebecca Reynolds             Kevin Martz
Murray, Kentucky            Covington, Kentucky